JiCOOKS, Judge.
The St. Landry Parish Police Jury appeals the trial court’s issuance of an Alternative Writ of Mandamus against it in favor of the Parish Coroner. The writ of mandamus directed the Police Jury to provide a $25,000.00 annual salary to the Coroner and to provide $96,000.00 to fund the Coroner’s annual budget for “necessary or unavoidable” expenses. The trial court’s judgment also mandated certain procedural mechanisms for accounting, reduction, and crediting of funds received by the Coroner. For reasons which follow, we affirm the judgment of the trial court ordering the Police Jury to tender the Coroner $96,000.00 for “necessary or unavoidable” expenses. We reverse the trial court’s judgment on all other issues.
BACKGROUND FACTS
The facts of this case were not unforeseen and the issues we consider today, though presented with a different twist, are not res nova. We are satisfied the financial concerns which prompted the St. Landry Parish Police Jury to “say no” toj^the Coroner’s annual budget request are genuine and not motivated by desire to undermine the independence of those who hold this valued office by vote of the parish electors. The impasse which has occurred between these parties finds origin long before David Carriere, an attorney, stood alone in the clerk’s office on August 31, 1995 with only ten minutes remaining on the clock for all wishing to qualify in hopes of serving as parish coroner. The onlookers that day were not waiting in earnest for any medical doctor in the Parish to appear and enter a contest to hold this esteemed position. They knew too well the tribulations experienced by Dr. Sylvan Manuel, the retiring coroner, who held the post for twelve years.
A. Dr. Manuel’s Years In Office
The Coroner was not provided an office with supplies and equipment, a room to conduct examinations, a telephone, camera and *1204 films, or even a pager; nor reimbursed for using his personal vehicle to travel the many miles required to perform his duties. Dr. Manuel even paid postage, state dues and malpractice insurance for the Coroner’s office. His job as coroner for the parish required that he remain on call 24 hours daily, 365 days a year. Dr. Manuel could not afford to pay a physician to perform the services demanded during his absence for illness or vacation. The first few years after his election, Dr. Alban Williams voluntarily assisted the deputy coroner (who was not a licensed physician) without charging the Parish to allow Dr. Manuel time to vacation with his family.
The Parish does not have a morgue headed by a forensic pathologist possessing the expertise to perform autopsies statutorily required in cases where foul play is suspected or death results from other than natural causes. See La.R.S. 33:1563(B). Consequently, Dr. Manuel secured the services of Dr. Emil Laga to perform this mandated responsibility. In turn, Dr. Laga relied on the gratuity of funeral homes ^located in the Parish which allowed him use of their facilities free of charge to perform autopsies. The funeral homes also transported the hod-ies for the Coroner’s office without remuneration. Dr. Laga’s invoices for his services were submitted to the Jury for payment separate from the Coroner’s submissions. Through the years, Dr. Laga complained that the Police Jury’s failure to pay for his services without considerable delay was becoming intolerable. On occasions, he refused to perform necessary autopsies without compensation, forcing the Sheriff to pay for such examinations out of his office’s already burdened funds to preserve vital evidence in criminal cases.
Dr. Manuel candidly acknowledged he could not perform all the duties assigned him by statutes with the meager funds available for the operations of the Coroner’s office.[1] Besides Dr. Manuel, the Coroner’s office staff was comprised of one deputy coroner who was not a licensed physician and a part-time secretary. As |4Pr. Manuel stated “there was no way [he] could physically examine all [the] rape cases.” Again, he was forced to rely on the gratuitous services of doctors on call at various hospitals located in the parish to perform examinations in such cases. Even the rape kits required were provided by Acadiana Crime Lab. At times, Dr. Manuel commissioned his “good friends,” *1205 who are physicians at the Opelousas General Hospital, to serve as deputy coroners to defray expenses associated with traveling to the hospital in death cases. Dr. Manuel also paid his personal secretary, employed at his private medical office, to perform clerical work for the Coroner’s office.
During his tenure, Dr. Manuel often sought additional funds for the operations, of the Coroner’s office from the Police Jury. His annual budget requests for the last two years he served reflected anticipated expenses, excluding many of the expenses personally assumed by him, totaling approximately $42,-500. Yet, the Police Jury budgeted only $20,900 for the operations of the Coroner’s office. This amount included all fees which the Police Jury expected Dr. Manuel to charge for his services, including the sums he paid directly to the deputy coroner and the part-time secretary.[2] Despite his persistent pleas, the Police Jury “in so many words” repeatedly responded “we can’t afford to give you anything additional, Dr. Manuel.”
In 1995 the Police Jury and Dr. Manuel spearheaded a move to place on the ballot a tax proposition specifically earmarked to alleviate the financial burden placed on the Parish Coroner. This tax measure was resoundingly defeated by the Parish electors.
|5B. The Burden Shouldered By Other Coroners
The financial woes experienced by Dr. Manuel as he struggled to perform his duties as the parish coroner, though individually challenging, were not isolated occurrences. Many physicians who serve as coroners, especially in the State’s rural parishes, found themselves similarly burdened by the increasing duties legislatively assigned them over the years and the economic demands placed on them to pay rising operating expenses from personal resources.
Dr. Mark Dawson, sharing his thirteen year experiences as coroner of Acadia Parish, testified “the lack of funding ... has put a very dangerous strain on the entire office and the District Attorney’s office and ... law enforcement in [the parish].” Like St. Landry Parish, Acadia Parish Police Jury does not provide office space for the Coroner’s operations and it does not maintain a morgue with a forensic pathologist on staff to perform autopsies. Dr. Dawson has been forced to contract outside the.parish with Dr. Welke to perform this necessary service. Often, however, the Police Jury “just don’t pay” the autopsy charges invoiced by Dr. Welke. Dr. Dawson employs two deputy coroners, both of whom do not possess medical licenses, to assist him; and he pays each $800 monthly for their services. Like Dr. Manuel, Dr. Dawson uses his private office to conduct the operations of the Coroner’s office. He does not receive any funds for a telephone, postage, copying, gasoline, fax machine, filing cabinets, computers, printers, utilities, rent, or insurance premiums. He foots the entire salary paid his secretary who also works for the Coroner’s office. The Coroner’s office is expected to remain open seven days a week, 24 hours a day. Yet, the Jury has not provided Dr. Dawson any funds to employ a deputy coroner licensed to practice medicine. As a result, Dr. Dawson has been forced to discharge the duties of his office without relief or time off to spendj^with his family.
The photos Dr. Dawson is required to take at crime scenes or vehicular accidents are furnished by photographers employed by “Crowley Newspapers” which also provide the films and pay the developing expenses. The Coroner’s cost for storing and transporting bodies are absorbed by funeral homes and Dr. Dawson’s private medical office. He usually works on matters involving the Coroner’s office three to four hours a day, seven days a week. The Acadia Parish Police Jury budgets only $850 monthly as salary for Dr. Dawson’s professional services. Even this miserly amount, the Police Jury has refused *1206 to pay the Coroner in full on a monthly basis. Though the Jury allocated $31,744 as operating funds for the Coroner’s office which included Dr. Dawson’s salary and that of his two deputies, in actuality it paid the deputy coroners $200 less than the salary budgeted; and it simply failed to tender for the Coroner’s exclusive use all the funds designated for his office operations.
The dilemma confronting Dr. Dawson and many coroners who served the public’s interest cannot be explained more profoundly than he expressed:
“It’s very difficult [to function as Coroner of a rural parish without adequate funding] and ... it’s downright dangerous [medically and legally] for me to be Coroner of Acadia Parish without funds for autopsies, without funds for supplies, without fund for CEC’s, I have other parishes threatening to sue me because we didn’t pay for legitimate cost, I have the District Attorney having to go to murder trials and I have to tell him we can’t get an autopsy and then I have the D.A.’s office calling me and saying of course we need an autopsy and I say well take it to the Police Jury because we don’t have any money for an autopsy ... it’s very dangerous being the parish Coroner and I am the Coroner because I think the people need a Coroner, but it certainly cost me a lot of my time and a lot of my money and 90% of my headaches. ”
The Evangeline Parish Police Jury, unlike Acadia and St. Landry, provides an office for its coroner. Dr. Rodrick Perron who serves in that capacity described his office as “a hall [with] plenty bathrooms and plenty showers in it.” Judge Aucoin, who visited this hallway many times before, confirmed that it is “a 17narrow thing [without] windows or anything in it” once used as the Petit Jury Room. Because the “hall” is so narrow in width, Dr. Perron barely fits in it. And if that is not bad enough, Dr. Perron cannot occupy “all” the hallway. He must share it with others! The Jury has refused to pay any additional expenses for the Coroner’s quarters.
C. The Lawyer Who Become Coroner
No person “in the know” was surprised by Carriere’s election, without opposition, to fill the vacancy created by Dr. Manuel’s retirement as the St. Landry Parish Coroner. The physicians who gathered to discuss the post all expressed they were not interested in vying for the seat because the Police Jury refused to fund the office adequately. They were all unwilling to fill the shoes of Dr. Manuel and the many coroners serving the rural parishes of this State who for many years generously bequeathed great portions of their personal funds to the public coffer for the operations of the Coroner’s office.
Carriere’s election to the position of coroner, though not occurring by happenstance, was nonetheless forewarning. In many states the office of coroner has spawned much controversy.[3] The only qualification the coroner must possess in some jurisdictions is the ability to garner the votes needed for election to the post. Several states have opted to replace the coroner system with a medical examiner.[4] A lawyer may serve as parish coroner only if no physician qualifies to hold the position. This constitutional requirement has worked well and perhaps distinguishes Louisiana’s coroner system from many jurisdictions where the position has been |8attacked as antiquated. La. Const. Art. V § 29.[5]
PROCEDURAL HISTORY
The Police Jury rejected Carriere’s budget request and refused to pay a dime more to fund the Coroner’s office than it provided Dr. Manuel. Carriere sought a writ of mandamus directing the Police Jury to adequately fund the Coroner’s office and to pay him a reasonable salary for his services. The 27th Judicial District trial judges, after all recused themselves, and the Clerk of Court for St. Landry Parish filed intervention petitions al *1207 leging their offices’ mandated expenses far exceeded the amounts budgeted and funded by the Parish Jury. However, the district judges and Clerk of Court stated the excess sums needed to maintain their offices were paid from the Judicial Expense Fund and the Clerk of Court’s General Operating Fund, respectively. While siding with neither the Coroner nor the Police Jury, the intervenors sought to limit the Coroner’s relief to only reasonable and necessary mandated expenses; and, in the alternative, they requested the court apportion all the funds available to the Police Jury for mandated expenses on a pro rata basis to all parish offices constitutionally created.
The trial judge granted Carriere’s request and ordered the Police Jury to immediately provide $96,000 for the “necessary or unavoidable” expenses of the Coroner’s office and to pay the Coroner $25,000 in salary, plus health insurance and retirement benefits. Ruling on the intervenors’ prayers for relief, the trial judge ordered that: “[T]he funds budgeted to the Judiciary and the St. Landry Parish Clerk of Court shall not be impinged upon by this Court’s ruling.” The Police Jury asked the trial judge to stay his order and allow it to suspensively appeal the court’s judgment. The judge denied the Jury’s request. This Court eventually granted the 19Jury leave to file a suspensive appeal. Subsequently, the Jury lodged the present appeal; and, the Coroner answered also urging that the trial court’s order was erroneous in part.
Although the Jury allotted funds for the operations of the Coroner’s office in 1996, it did not tender any sums to Carriere;' and, it failed to pay promptly invoices of the forensic pathologist who refused to perform needed autopsies in the parish. The Police Jury also refused to tender the accumulated sum in the Coroner’s Operational fund to reimburse Carriere for out of pocket expenses incurred by him after taking office. The Jury did not pay the salaries of the doctors and investigators hired by Carriere to staff the Coroner’s office. Forced to man the office 24 hours a day, 7 days a week without help, Carriere resigned on June 11, 1996. On June 17, 1996, the Jury appointed Dr. Russell Pavich to act as coroner.[6] Apparently, Dr. Terry Welke agreed to perform needed autopsies for the parish in the interim; but now he complains the Jury has not paid for his services. Most of the autopsies he performed are mandated by La.R.S. 3S:156S(B) and involved suspected homicides. Dr. Welke has threatened to release the bodies placed in his custody without examination if the Jury does not pay the past due invoices.
LAW AND ANALYSIS
To place blame entirely on police juries for the coroners’ dilemma requires that we ignore the severe economic reverses which occurred in Louisiana in recent years. St. Landry Parish, among the many local governments, perhaps was one | ipof the hardest hit by the dwindling pool of funds available to pay recurring expenses for vital public services. As a backdrop, we find enlightening the following observations of I. Jackson Bur-son, Jr., in a Louisiana Law Review article:
“The economic depression of the late 1980’s in Louisiana exacerbated structural weaknesses in the Louisiana government and finance at all levels....As money from Baton Rouge diminished, the parishes saw federal revenue sharing funds cut off simultaneously... .[M]any parishes unfortunately budgeted these non-recurring federal funds for the payment of recurring expenses of vital government services including payment of many expenses mandated by state law, which increased dramatically at the same time as federal revenue sharing disappeared.
Concurrent with the cessation of the federal and state largesse_most of Louisiana’s parish governments experienced a decrease in the valuation of real property *1208 assessed for ad valorem tax purposes. Farm land that sold for $1,500.00 an acre in 1978 sold for $600.00 in 1988. Commercial property lost market value precipitously as businesses went bankrupt. Homes, only eighty-five percent of which were subject to ad valorem taxation statewide anyway, lost value with stunning swiftness.
The coalescence of all these negative events left many parish governments on the verge of bankruptcy. Headlines revealed parish police juries from such parishes as St. Landry and Tangipahoa seriously discussing termination of vital services....
As the parish police juries teetered on the brink of insolvency, many of the parish officials entrusted with the performance of vital judicial, executive, electoral, and administrative functions found their various sources of revenue deleteriously affected by the general reduction of state support services and the decline of local governmental revenues caused by the general decline of commerce across the state. For instance, as fewer state troopers patrolled Louisiana highways, fewer traffic tickets were given and the criminal court cost funds declined markedly in most parishes. This circumstance deprived district attorneys and the district judges of money they relied upon for performing their functions. Once again the parish police juries were adversely affected because they receive fifty percent of the surplus in the criminal court fund at the end of the fiscal year.
[[Image here]]
Federal courts were limiting jail cell occupancy and requiring improvements to parish jails at the very time that the funds available to pay for such improvements were diminishing.
Increases in crime required more expensive services from parish district attorneys, coroners, sheriffs, clerks of court, and courts.
Not surprisingly, many parish officials who determine their budgets independent of police jury control found it necessary to request increases in the funds that state law mandates parish police | injuries to provide parish officials at the very time that parish police juries sought to cut back, or at least hold the line, on these expenses. A clash was inevitable and it has occurred.” [7] (Emphasis added).
The parties in this case regrettably have clashed. We do not view lightly or attempt here to shirk the awesome responsibility placed on the courts’ shoulder to resolve this sad state of affairs. As constitutionally empowered officials, coroners are not without right or remedy. In fashioning relief for them, however, we cannot encroach the authority vested in the legislative branch of government. Though restrained on first instance to compel the St. Landry Parish Jury to adequately compensate the Coroner for his services, we nonetheless possess present power to require it to pay without further delay the expenditures certified by him as “necessary or unavoidable.”
CORONER’S BUDGET
Louisiana Constitution Article V establishes the judicial branch of government. In addition to creating a tiered court system and judicial officers, this article provides each judicial district shall elect a district attorney and each parish shall elect a sheriff, clerk of court, and a coroner. The coroner’s office has been “mandated by every state constitution since 1845.” Mullins v. State, 387 So.2d 1151 (La.1980); La. Const. of 1974, art. 5, § 29; La. Const, of 1921, art. 7, § 70; La. Const. of 1913, art. 119; La. Const. of 1898, art. 119; La. Const, of 1879, art. 118; La. Const. of 1898, tit. IV, art. 93; La. Const. of 1864, tit. V, art. 84; La. Const. of 1852, tit. IV, art. 80; La. Const. of 1845, tit. IV, art. 83. While the parish governing authorities must provide facilities and operational expenses for these constitutional offices, they are not granted any “voice in determining the salary and emoluments due” the public | i2pfficials who serve as overseers or budgetary power over their operational expendi *1209 tures. Such authority is vested solely in the Legislature.[8] The courts have held parish police juries, when directed by the Legislature, are obligated to provide mandated expenses for these state officials. Reed v. Washington Parish Police Jury, 518 So.2d 1044 (La.1988); McCain v. Grant Parish Police Jury, 440 So.2d 1369 (La.App. 3 Cir.1983); City Court of Breaux Bridge v. Town of Breaux Bridge, 440 So.2d 1374 (La.App. 3 Cir.1983), writ denied, 444 So.2d 1219 (La.1984). Coroners are state officers and the Legislature has provided that police juries shall pay fees, or in lieu thereof salaries, and expenses for the services they render and operating costs they incur in maintaining their offices. Mullins, 387 So.2d 1151 (La.1980). The local governing authority has no power to abolish this constitutionally created office. Id.
As noted, the trial judge ordered the St. Landry Parish Police Jury to pay $96,000 in mandated expenses for the operations of the Coroner’s office in 1996. A coroner is required by La.R.S. 33:1556(B)(1) and F to certify to the police jury “all necessary or unavoidable expenses ” he anticipates incurring incident to operating his office. Lowry v. City of Oakdale, 429 So.2d 286 (La.App. 3 Cir.1983). Carriere’s itemized budget for 1996 listed various expenses totaling $227,190 which included $53,700 for his salary, health insurance, and retirement benefits. The balance, $173,490, Carriere certified were “reasonable or unavoidable” expenses. Carriere insists the latter expenses are “mandated” and the Jury lacks discretion to haggle over them. He contends issuance of a writ of mandamus is proper to compel the Jury to perform this purely ministerial duty; and, the only defense the Jury is permitted to urge against payment is that the requested expenses are not legitimate or quantitatively reasonable.
| igThe St. Landry Parish Police Jury does not contest the affirmative duty placed on it, as found in La.R.S. 33:1556(B)(1) and F, to provide “necessary or unavoidable expenses” for the operations of the Coroner’s office. Neither does it contest the court’s authority to direct it by writ of mandamus to pay mandated expenses. Rather, the Jury asserts it did not breach this legislatively imposed duty by rejecting Carriere’s budget. It alleges that the actual expenses to operate the Coroner’s office annually in St. Landry Parish are not greater than $10,000; and the expenses certified by Carriere are not legitimate or quantitatively reasonable. Relying on subsections D, E, and F of La.R.S. 33:1556, the Jury argues this court is prevented from affirming any order directing it to pay most, if not all, the expenses itemized by Carriere because “these provisions envision a division of the costs of the operation of the Coroner’s office between the parish and municipalities located in the parish.”[9] Many of Carriere’s budgeted expenses, the Jury states, “should be offset by the costs of each service and billed to the municipalities in the parish.” Consequently, the Jury urges the municipalities in the parish are indispensable parties; and, they should be joined as necessary party defendants in this action. Without these parties, the Jury maintains any order directing it to pay all the Coroner’s necessary or unavoidable operational expenses, which does not compel the municipalities to contribute a pro rata portion of these costs, violates the “fee scheme” it was legislatively authorized to adopt in funding the Coroner’s office. Finally, the Jury asserts its decision not to fund the office much above the amount collected and deposited in the special Coroner’s Operation Funds is chiefly discretionary and not ministerial in nature.
I14C
Necessary Or Unavoidable Expenses
Citing the Supreme Court’s holding in Reed v. Washington Parish Police Jury, 518 So.2d 1044 (La.1988), the Jury argues many of the expenses certified by Carriere as mandated are not legitimate or reasonable. Under the section in Carriere’s budget request *1210 captioned Mandated Expenses, he listed the following:
Mandated Expenses MONTHLY ANNUALLY
/ACCOUNTING CHARGES $ 150.00 $ 1,800.00
/ASSOCIATION AND DUES 50.00 600.00
AUTOPSIES (CONTRACTS) 1,500.00 18,000.00
/BANKING EXPENSES 15.00 180.00
INSURANCE
/ ERRORS AND OMISSIONS 125.00 1,500.00
/ NON-OWNED AUTOMOBILES 90.00 1,080.00
WORKER’S COMPENSATION (6%) 600.00 7,200.00
/ MEDICAL SUPPLIES (DRAWING BLOOD, RAPE KIT, GLOVES, ETC.) 50.00 600.00
MOBILE PHONE 60.00 720.00
OFFICE RENT, UTILITIES, JANITORIAL 00.00 00.00
OFFICE EQUIPMENT 00.00 00.00 COMPUTERS, PRINTERS, COPIERS FILING CABINETS, DESK, MISC.
/ OFFICE COPY AND COMPUTER SUPPLIES 75.00 900.00
/ PAGER 30.00 360.00
/ POSTAGE 75.00 900.00
SALARIES:
CHIEF DEPUTY 2,000.00 24,000.00
INVESTIGATOR 1,500.00 18,000.00
SECRETARY 500.00 6,000.00
DEPUTY CORONER (CONTRACT) 1,000.00 12,000.00
DOCTOR (CONTRACT FOR RAPE EXAMS, EVIDENCE 1,250.00 15,000.00
COLLECTIONS, COMMITMENTS, ETC.)
LPN FOR COMMITMENTS 2,000.00 24,000.00
PHOTOGRAPHER 200.00 2,400.00
ESTIMATED MEDICAL INSURANCE
AND RETIREMENT BENEFIT (25%) 2,112.50 25,350.00
/ TELEPHONE SERVICE — MONTHLY 125.00 1,500.00
TRANSPORTATION COST OF:
(@0.31 PER MILE) THE CORONER 200.00 2,400.00
INVESTIGATOR 200.00 2,400.00
PHOTOGRAPHER 50.00 600.00
TRANSPORTATION OF BODIES VEHICLE AND ASSOCIATED EXPENSES 500.00 6,000.00
STORAGE OF BODIES CONTRACT WITH FUNERAL HOMES 00,00 00,00
SUBTOTAL 14,457.50 173,490.00
The Jury contends only those expenses checked may be characterized as “necessary or unavoidable.” These expenses total $9,420. The jury attacks theh5$7,200 figure Carriere designated for workers’ compensation premiums as “wholly [dependent] upon the number of personnel retained by [him] and whether they [are employees or independent contractors].” The salaries and emoluments listed by Carriere for support person *1211 nel, the Jury declares, must be paid out of fees collected by the Coroner. The expenses for autopsies, the Jury claims, are provided for in subsection A(l)(c), D, and E, not subsection B. We are left to fathom reasons for the Jury’s refusal to pay the transportation expenses and mobile telephone charges requested.
Even the $9,420 which the Jury reluctantly concedes are mandated, it refuses to pay, asserting this amount is excessive but indicating in brief it “would accord the coroner a hearing as to the reasonableness of the figure.” The Jury’s gracious offer to negotiate comes too late.
A. Office Space, Supplies, And Equipment
La.R.S. 33:1556(B)provides:
B(l) All necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the coroner’s office shall be paid by the parish when such expenses are certified by the coroner as being necessary or unavoidable.
(2) When quarters for the coroner’s office or a morgue are established by the parish, the parish shall furnish essential supplies and equipment for the office or morgue.
The Jury asserts if this subsection is read in pari materia with the succeeding subsections D, E, and F, all the expenses listed by Carriere must be shared by the municipalities. We disagree and decline the Jury’s invitation to overlook the clear and unambiguous mandate found in subsection B. Like La.R.S. 16:6, which provides a mandatory expense allowance for operating the district attorneys’ offices, subsection B similarly provides such allowance for operating the coroners’ offices. Reed, 518 So.2d at 1044. When reading this subsection with the other provisions, we | i6must endeavor to harmonize each with the other. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980). Subsection B(l) expressly declares “[all] necessary or unavoidable expenses .... shall be paid by the parish.... ” Requiring the Coroner to seek proportionate contributions for the payment of these basic expenses from the municipalities incorporated in St. Landry Parish renders the language in subsection B meaningless. We do not believe the Legislature intended nor envisioned such a scheme for funding the essential expenses of the Coroner’s office. The Jury’s companion argument that the municipalities are indispensable parties in this suit likewise is flawed.
We also reject the Jury’s circuitous contention that subpart (2) of subsection B frees it from full responsibility to pay rent or provide supplies and equipment for the Coroner’s office when it elected not to establish quarters or a morgue for the Coroner’s operations. As found in Reed, 518 So.2d at 1046 “[i]t would make little sense for the legislature to create a mandatory expense allowance and then tell the providers of the fund they were free to fund that expense allowance or not.” This subpart merely grants the Jury the option to provide shelter for the Coroner’s office in a parish building presumably for less cost than it would otherwise pay to rent suitable quarters elsewhere. Further, Carriere’s failure to provide cost figures for the Coroner’s office space, supplies and equipment did not prevent the trial court from considering them in determining the reasonableness of his requested budget.
B. Coroner’s Operational Fund
The Jury urges further the expenses Carriere listed which are mandated must be paid first from the Coroner’s Operational Fund. In relevant part, La.R.S. 33:1572 provides:
li7A(l) [E]ach judge, including those of city court, may impose a ten dollar fee on every defendant who is convicted after trial or plea of guilty, except for traffic violations, which fee shall be dedicated solely to defraying the operational costs of the office of the coroner of the parish in which the conviction occurred. However, in the district court in St. Landry Parish, the fee provided in this Section shall be imposed.
(3) The coroner shall not request additional funds from the parish governing authority to defray the operational costs of his office until all funds provided in this Section have been accounted for. (Emphasis added).
*1212 The evidence established the $10 cost assessed against every defendant who is convicted or pleads guilty, except for traffic violators, which must be used first to defray the coroner’s operational expenses have not exceeded in total $3,600.00 annually.[10] Nevertheless, the Jury argues La.R.S. 33:1572 A(3) “requires expenditure of these monies before a request to the police jury may be made.” We disagree with the Jury’s construction. This provision is followed by subsection B which requires that all sums so collected must be placed in the treasury of the parish in which the coroner holds office for deposit in a Coroner’s Operational Fund; and, such shall be used in defraying the coroner’s operational expenses upon his request. The funds once placed in the parish treasury remain under the Jury’s exclusive control.
We do not believe the Legislature intended that coroners exhaust fluctuating funds which they neither collect nor control before demanding that juries advance them mandated expenses for the operational costs of their offices. In practice, this requirement would force coroners to rely on the small sums available in the Coroner’s Operational Fund accounts in many rural parishes as the primary source of revenue to operate their offices. Instead, we believe La.R.S. 33:1572A(3) is nothing more than a drafting measure. It requires a jury’s treasurer to withdraw the |18funds available in the Coroner’s Operational Expense account first to cover a coroner’s certified operational costs and to pay the balance needed from other funds controlled by the parish government.
C. Autopsies
The Jury does not contend it is not required to pay fees and costs for autopsies. It merely asserts these charges are not mandated expenses because they are not specifically mentioned in La.R.S. 33:1556B. However, we cannot view subsection B in isolation. La.R.S. 33:1556 must be read as a whole to ascertain the intent of the Legislature. While subsection B uses the phrase “necessary or unavoidable,” other parts of the statute employ the term “shall.” This term is also mandatory. Subsections A, B, D, and E must be construed together to give effect to the entire statute.
Dr. Laga’s charges for performing an autopsy ranged from $1,000 to $1,500 which includes his fee. Based on prior invoices submitted to the parish for Dr. Laga’s services, Carriere listed $18,000 as the amount he anticipated spending annually for autopsies. Carriere explained this amount did not include any charges he otherwise might incur “but for” the generosity of local funeral homes which allowed Dr. Laga use of their facilities. The Jury has opted not to provide a morgue for the coroner and it does not furnish essential supplies or equipment needed to perform autopsies. See La.R.S. 33:1556B(2).
La.R.S. 33:1563B(1) provides the coroner “shall perform or cause to be performed by a competent physician an autopsy in the case of any death where there is a reasonable probability that the violation of a criminal statute has contributed to the death.” In the latter instance, the Legislature has removed any discretion the coroner otherwise has in deciding when to perform an autopsy. See also La.R.S. 11933:1556C(2). La.R.S. 33:1556D(1) provides: “The Parish or municipality in which the deceased was domiciled, in the ease of a death due to natural cause, or the parish or municipality in which the accident or crime occurred, in the case of a death due to other than natural causes, shall pay the coroner’s fees and any necessary fees for the investigation and the cost of any autopsy including the cost of transporting the body.”[11] (Emphasis added). Subsection (A) *1213 of that provision fixes the coroner’s fee for each autopsy.
We presume the expenses listed by Carri-.ere as “necessary or unavoidable” for autopsies are those statutorily required by the Legislature; and, these expenses are for autopsies when the parish is solely responsible for payment. The Jury does not allege the autopsy fees and incidental costs are unreasonable or exceed the amount authorized by law. In fact, the record reflects the Jury paid Dr. Laga’s charges for autopsies, albeit in some cases two years after he rendered services. The Legislature by using the term “shall” in directing the parish governing authority to pay the fees and costs of autopsies expressly removed from the Jury any power to negotiate with the coroner on this matter. Thus, the coroner is not required to seek the Jury’s affirmative approval of these expenses before they are incurred. A writ of mandamus is an appropriate device to compel the Police Jury to perform its mandatory duty to pay the reasonable fees and costs of autopsies. Reed, 518 So.2d]2oat 1044.
D. Salaries And Contracts: Support Personnel And Other Assistants
We find more troublesome the Jury’s contention that it cannot be compelled by writ of mandamus to pay the expenses designated by Carriere under the subheading “Salaries.” It argues:
“[T]he trial Court was without authority to order the payment of any salaries of any of the ancillary personnel. R.S. 33:1555 clearly authorizes the payment of salaries for an assistant coroner if the coroner is on a salary basis. Otherwise the statue states that “... these employees shall be paid by the coroner out of his fees ...” Further, if the Coroner is on a salary basis then the salary for ancillary employees must be negotiated — as the statue states — “by arrangement with the parish government authority.” Such a decision is surely a discretionary one. The only ministerial function is the requirement to negotiate for such salaries if the Police Jury has negotiated a salary with the Coroner. That initial decision is clearly not ministerial, but purely discretionary and legislative.
The statutes then provide that, absent an agreement for a salary, all personnel of the coroner shall be paid from the proceeds of [his] fees.”
La.R.S. 33:1555 states:
A. Each coroner may appoint one or more deputy or assistant coroners to perform the duties, who need not be residents of the parish. However, any person appointed as a deputy or assistant corner, who is not a resident of the parish, shall be a licensed physician. They shall possess the same qualifications as the coroner and be paid by the coroner appointing them or by the parish governing authority if the coroner is on a salary basis. A person may serve as a deputy or assistant coroner on a part-time basis in more than one parish. The tenure of the appointment shall be determined by the appointing coroner but shall not be longer than the coroner’s term of office. The coroner shall be responsible for the acts of his deputy or assistant coroners.
B. The coroner may appoint any necessary secretaries, stenographers, clerks, technicians, investigators, official photographers, or other helpers. The salaries of these employees shall be paid by the coroner out of this fees or by arrangement ivith the parish governing authority if the corner is on a salary basis. (Emphasis added.).
La.R.S. 33:1556 provides certain fees for the coroner’s services and the parish governing authority shall pay either the scheduled charges or “arrange” salaries for compensating the coroner and his office personnel. The coroner and his staff may not charge fees if they are paid a negotiated salary by the parish authority. \21See Lowry v. City of Oakdale, 429 So.2d 236 (La.App. 3 Cir.1983). The problem confronting us is simply this: St. Landry Parish Police Jury has opted to pay the Coroner and his support personnel only statutory fees for their services and the Jury insists it cannot be compelled to pay the Coroner or his assistants salaries. The Coroner, on the other hand, argues the problem we face is not a real one because La.R.S. 33:1556 does not expressly state whether he or the parish governing body possesses the *1214 authority to decide by what method he and his staff should be compensated. The Coroner maintains that “allowing [him] rather than the police jury to choose whether [his] office should be funded on a salary or fee basis preserves the constitutional independence of the coroner.” Such a result, he asserts, also is consistent with the Supreme Court’s holding in Reed. To find otherwise, he argues, “grants the police jury unreviewable control over the coroner when the statutory fees are insufficient to fund the reasonably necessary expenses of the office.” Countering, the Jury asserts Carriere’s passionate plea must be addressed to the Legislature or the political arena. The Jury urges the courts of this state do not possess the power to resolve this intergovernmental dispute; and, neither La.R.S. 33:1555 nor any other provision requires it to pay salaries to the Coroner or his support personnel as “necessary” or “mandatory” expenses.
We have read La.R.S. 33:1555 more than once and with great care. On each passing, we have been unable to resolve this statute’s internal conflicts.[12] However, La.R.S. 33:1555 must be construed “so as to give it effect and accomplish the purpose for which it was enacted.” Reed, 518 So.2d at 1045. In doing so, we are guided by the well settled rule of statutory construction that all laws dealing with thej^same subject matter must be construed together in search of the Legislature’s intent. When a statute is susceptible of two interpretations, a court must choose the one which affords a reasonable and practical effect to the entire act over one which renders part of it meaningless or useless. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); J.M. Brown Const. Co. v. D & M Mechanical Con., Inc., 275 So.2d 401 (La.1973).
In addition to the authority vested in coroners to appoint or employ support personnel, La.R.S. 33:1560 allows them to “contract with any competent physician or other expert to assist in the conduct of an investigation or autopsy” and the compensation for the services of each provider “shall be mutually agreed upon by the coroner and governing authority of the parish” or chief executive officer or fiscal officer if the amount charged exceeds the sum of five hundred dollars.
La.R.S. 33:1555 and 1560 are silent on what happens if a coroner cannot secure the parish government body’s agreement to pay salaries or other compensation for his support personnel or those whom he contracts with to provide services. If this occurs, the coroner’s power to appoint support personnel or to contract for the services of assistants has no consequence unless he opts to pay them out of his statutory fees. We simply do not believe the Legislature intended this result. Our conclusion is buttressed by the language of these provisions, though ineptly drafted. Both provisions purport to grant coroners authority to hire support personnel or to contract for the services of assistants. To perform their constitutional function as parish coroners and the ever increasing duties assigned them by the Legislature, they must possess this authority. Otherwise, coroners’ jobs are too burdensome; and, the public cannot expect them to serve competently in office. We are convinced, as well, the Legislature could not have intended that coroners pay out of statutory fees all the ^compensation required to retain the necessary services of support personnel or assistants. These fees, over time, have become inadequate even to compensate them.
As we noted in McCain v. Grant Parish Police Jury, 440 So.2d 1369 (La.App. 3 Cir.1983) “[o]ur government is based on a constitution.” The powers of this State’s government is divided into three separate branches: Legislative, executive, and judicial. While Art. VI, § 7 of the Louisiana Constitution of 1974 allow local governments to exercise legislative power, they may not do so without limits. Except as otherwise provided by the constitution, local governments may not “exercise power belonging” to the judicial branch of government. The Coroner is a constitutional officer whose power emanates from the “judicial branch” of government. The Police Jury does not possess any budget *1215 ary power over the expenditures of the Coroner’s office. Article VI § 25 of the 1974 Constitution. The Coroner has certified in this case that the statutory fees alone are inadequate and the salaries designated by him are “necessary or unavoidable” expenses which he must incur to function in office. We cannot ignore the important role coroners play in the Louisiana criminal justice system. The Legislature has assigned them, among others, the task of gathering and preserving vital evidence in suspicious death eases.
In addition to the fees specified in La.R.S. 33:1556A, D, and E and operational costs mandated in B, subsection F declares “[n]othing herein shall be construed as prohibiting the payment by the parish or municipality of all necessary or unavoidable expenses certified by the coroner. ’’(Emphasis added). We must presume this provision was not redundant but written for an express purpose. Unlike subsection B which specifically recites the parish shall pay “[a]ll necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the coroner’s office,” subsection F is more generic and all encompassing in 124expression. We believe the Legislature, by enacting subsection F of La.R.S. 33:1556 as a catch all provision, mandated that local governing authorities provide, in addition to statutory fees, sufficient funds for “all necessary or unavoidable expenses certified by the coroner” and the only limitation placed on such expenses is that they must be reasonable and essential for the coroner to perform his statutory duties.[13] Coroners simply cannot perform the multiple tasks assigned them by the legislature without the services of other qualified assistants. Moreover, the courts of this state have inherent power to compel the guardians of the public fisc to budget adequate funds for the operations of coroners’ offices which function as arms of the judicial branch of government. McCain v. Grant Police Jury, 440 So.2d 1369 (La.App. 3 Cir.1983); City Court of Breaux Bridge v. Town of Breaux Bridge, 440 So.2d 1374 (La.App. 3 Cir.1983).
E. Discretionary Authority
The Jury does not contend it lacks funds to pay the amount ordered by the trial judge. Neither does the Jury argue it cannot pay the combined expenditures it is mandated to provide state officials without incurring a prohibited budget deficit. We believe the Legislature did not intend to allow the Jury to avoid funding the Coroner’s expenditures by simply refusing to “agree” or “make arrangement” to pay them. The parish government cannot do indirectly what the law forbids it from doing directly. The Jury does not possess any budgetary power or authority to control the Coroner’s operational expenditures. The trial judge’s decision to order the Jury, by writ of mandamus, to budget and tender to the Coroner $96,000 for the |25“necessary or unavoidable” expenses of his office was reasonable. He slashed Carri-ere’s requested budget nearly in half. We will not disturb this portion of the judgment.
II.
Coroner’s Salary
The trial judge also ordered the Jury to pay the Coroner a salary of $25,000, plus health insurance and retirement benefits. Like La.R.S. 33:1556F which authorizes additional funding to pay the Coroner’s “necessary or unavoidable” expenses, La.R.S. 33:1559, in part, mandates the State to pay coroners, as extra compensation, $548 per month. Subsection B of this provision states “[t]he extra compensation for coroners payable by the state ... shall be payable monthly by the state treasurer on the warrant of the coroner from funds appropriated by the legislature for this purpose.”(Emphasis added.) Although Carriere pointed out the State has not paid the statutory supplement timely, the State has not been joined as a party defendant in this proceeding.
*1216 Subsection B further declares the parish governing authority “may” pay the Coroner an additional $500 per month as compensation for his services. This provision is entirely discretionary in tenor. Carri-ere does not claim the Coroner’s pay is a mandated expense. The Legislature has provided salaries for the district judges, sheriffs, district attorneys, and other constitutionally empowered officials. We must afford it first opportunity to either compel local governing bodies to pay additional compensation to coroners who do not receive negotiated salaries or to provide an alternative funding base to pay “just” compensation for their labor. To place this added burden on local governments, without clear instruction from the Legislature, is a drastic course we elect not to take at this juncture. But, as the trial judge aptly put it, if the Legislature fails in this regard, “ the tie can and will be broken by the Court." gThe people of this state created the position held by coroners; and, the Legislature must provide funding to adequately compensate them.
INTERVENORS’ CLAIMS
The Jury correctly asserts the trial judge erred in ordering it to pay the Coroner’s expenditures without impinging on the funds budgeted to pay the mandated expenses of the judges and Clerk of Court. The court was not required to resolve or reconcile any potential conflict which might occur if the parish government is unable to pay the Coroner’s expenses and those budgeted for other constitutional offices. The Jury did not contend payment of all the mandated expenses will result in a deficit forbidden by the law. The record is incomplete for us to render any definitive ruling on this issue. The trial judge properly reserved intervenors’ right to litigate this question in the future. However, that portion of the judgment directing that the parish government not impinge upon any funds budgeted to the intervenors was premature.
ACCOUNTING, REDUCTION, AND CREDITING
The district court also erred in requiring the Coroner to return or credit to the Police Jury, before February 1st of each year, any funds not used during the given calender year. This error was compounded when he required the Coroner “to certify and account to the police jury for all expenditures and receipt of fees and funds [from all sources], if any, every four months beginning June 1, 1996.” The Legislature has not granted local governments the authority to “audit” state officers. This power is vested in the office of the Legislative Auditor who is authorized to examine and review all books and accounts which these officials must maintain. See La.R.S. 24:513 and 24:514. Further, the trial court’s ruling directing that the Coroner return or credit all funds received from other sources is contrary to law. La. R.S. 33:1556 provides for the payment of fees and “necessary or unavoidable” expenses 127⅛0 the Coroner’s office. The Coroner is not required to reimburse the Police Jury for the fees he is statutorily authorized to charge for his services; and, the Police Jury is not entitled to any offset for the supplemental pay he receives from the State or the autopsy and transportation expenses he receives from municipalities. Accordingly, we must strike this portion of the trial court’s order.
DECREE
For the foregoing reasons, the judgment of the trial court ordering the St. Landry Parish Police Jury to provide $96,000.00 for the “necessary or unavoidable” expenses of the Coroner’s office of St. Landry Parish, exclusive of salary and benefits to the Coroner, is affirmed. We reverse that portion of the judgment which compels the St. Landry Parish Police Jury to pay the Coroner’s salary, health insurance and retirement benefits. We likewise reverse that portion of the judgment which mandates certain procedures for accounting, reduction, and crediting all funds received by the Coroner and ordering that the funds budgeted to the Judiciary and the St. Landry Parish Clerk of Court shall not be impinged upon by this Court’s ruling. The costs of these proceedings are assessed against the St. Landry Parish Police Jury.
AFFIRMED IN PART AND REVERSED IN PART.
GREMILLION, J., concurs and assigns written reasons.

. There are many sections of the Revised Statutes and Louisiana Code of Criminal Procedure which specify the duties imposed on coroners. In addition to performing the noted autopsies and examination of victims who alleged they have been raped, coroners also are required to investigate all requests to cremate bodies and issue permits if no suspicious circumstances exist. They must maintain custody of bodies and dispose of all persons who die within the parish and whose bodies are not claimed by friends or relatives. Coroners shall make every reasonable effort to notify the next of kin in all cases of death occurring in the parish. They must arrange for the burial of paupers. If an individual executed a will in which he gives all or any part of his body as provided for by R.S. 17:2352(A), the coroner where the death occurs must deliver the gift to the donee in accordance with the Anatomical Gift Act. They must take charge of the personal effects and property of the deceased at the scene of death; and the coroner shall collect any physical property or evidence found on the body which relates to the cause and manner of death or identity of the deceased. They must request that law enforcement officials collect any physical property or evidence connected with the cause of death or identity of the deceased which is found at the scene but not on the body. La.R.S. 33:1551 et seq. In addition to these duties, coroners must prepare certificates of death; and perform or cause to be performed autopsies of all infants under the age of one year who die unexpectedly without explanation. If Sudden Infant Death Syndrome is the cause of an infant's death, the coroner must notify the director of the parish health unit within 48 hours after his determination. They must examine all alleged victims of carnal knowledge, sexual battery, incest, and crimes against nature when such cases are under police investigation. They must perform all physical or mental examinations or investigations requested by the district attorney, any judge, sheriff, chief of police or responsible citizen or resident acting in good faith in an emergency and in the furtherance of the public good and safety. They must give testimony in any case in court in matters arising from his official duties. Coroners must investigate all requests for commitment and interdiction of persons who are alleged to represent a danger to themselves or others. We highlight some of the duties coroners perform not only to emphasize the enormous responsibility they shoulder but to underscore the increasing demands placed on their time by legislative mandate.

. Although the parish budgeted $20,900 for the operations of the Coroner's office in 1995, it paid the Coroner only $16,930 for fees. This figure included sums withdrawn from the Coroner Operations funds collected by the clerk of court from criminal fines imposed. The Coroner also received $3,600 from the municipalities in the parish and $1050 for providing autopsy reports or other documents to attorneys or other persons on request. He received in total only $21,550. to operate his office in 1995. From this amount, he paid $300 per month to the deputy coroner and $250 per month to the part-time secretary.

. See Journal of the American Judicature Society, December 1958, at. p. 134

. Massachusetts replaced its coroner system with medical examiners in 1877.

.See generally, Preliminary Statement, LSA-C.Cr. P.T. Ill, The Coroner and Other Officers, Refs & Annos.

. La. Const Art. 5, § 30 provides:
"When a vacancy occurs in the following office, until it is filled by election as provided by law, shall be assumed by the persons herein designated: ... (4) coroner, by the chief deputy. If there is no such person to assume the duties when the vacancy occurs, the governing authority of the parish or parishes concerned shall appoint a qualified person to assume the duties of the office until filled by election.”
Dr. Pavich was elected Coroner to fill the vacancy on September 21, 1996.

. I. Jackson Burson, Jr., Not Endowed by Their Creator: State Mandated Expenses of Louisiana Parish Governing Bodies, La. L.Rev. Vol. 50 pp. 635-637. This article is found in the record and was presented by the St. Landry Police Jury as Exhibit C to a trial memorandum.

. See generally, Id. at pp. 635-709.

. St. Landry Parish has the following twelve incorporated municipalities within its borders: Opelousas, Eunice, Port Barre, Krotz Springs, Palmetto, Melville, Washington, Sunset, Grand Coteau, Cankton, Leonville and Arnaudville.

. The amount available in the Coroner's Operational Fund account depends on whether the parish is urban or rural; and its size and location.

. Subsection E similarly provides:
.When a death occurs and the death was due to natural causes, the coroner's fees and expenses, including the cost of transporting the body, shall be paid by the municipality in which &e decease was domiciled or by the parish if the deceased was domiciled in the parish outside of a municipality. When a death occurs and the death was due to other than natural causes, the coroner's fees and expenses including the cost of transporting the body shall be paid by the municipality in which the crime or accident occurred or by the parish if the crime or accident occurred in the parish outside of a municipality.

. Subsection A of R.S. 33:1555 allows the coroner to hire one or more deputy or assistant deputy coroner reciting only that these appointees are "to be paid by the coroner.” Unlike subpart B of the same provision, the coroner is not directed to use his fees for this purpose.

. Dr. Manuel testified in 1995, he collected only $3,600 from all the municipalities in St. Landry Parish and much of this sum was to reimburse him for corresponding expenses related to autop-síes. The jury did not third party the municipalities; and, we decline to find they are necessary and indispensable parties to this action.