780 So.2d 515 (2001)
Dr. Roderick P. PERRON, M.D., Coroner
v.
EVANGELINE PARISH POLICE JURY, et al.
No. 00-1049.
Court of Appeal of Louisiana, Third Circuit.
January 31, 2001.
Writ Granted May 4, 2001.
*517 David L. Carriere, Opelousas, LA, Counsel for Dr. Roderick P. Perron, M.D.
Christopher Brent Coreil, District Attorney, Anthony L. Walker, Ville Platte, LA, Counsel for Evangeline Parish Police Jury.
Court composed of Judge YELVERTON, Judge DECUIR and Judge AMY.
AMY, Judge.
The Coroner of Evangeline Parish filed a writ of mandamus to compel the Evangeline Parish Police Jury to provide funding for certain expenses associated with the operation of his office. After four years of hearings on various issues, the trial court rendered a final judgment ordering the police jury to pay: 1) a certain salary for the coroner and the coroner's ancillary personnel; 2) various out-of-pocket expenses incurred by Dr. Perron while performing his duties as coroner; and 3) attorney's fees incurred by Dr. Perron during the litigation of this matter. From this judgment, both parties appealed. For the following reasons we affirm in part and reverse in part.

Factual and Procedural Background
This matter arises out of a ongoing dispute between the Coroner and Police Jury of Evangeline Parish. For the last four *518 years the parties have been in conflict as to the type of funding, and as to the amount of funding, the police jury is obligated to allocate to the coroner's office out of the parish's general budget. The basis, it seems, for the confusion that has presented itself in this matter is that for several years prior to Dr. Roderick P. Perron taking office, there was very little formality as to how the coroner's office of Evangeline Parish functioned. In 1978, Dr. Charles E. Fontenot began serving as Coroner of Evangeline Parish fulfilling the unexpired term of Ramson K. Vidrine. Dr. Fontenot held the office until he chose not to run for re-election in 1995. During his tenure, Dr. Fontenot testified that he used his personal medical facility and staff to run the coroner's office, with minimal financial support or legal guidance from the police jury. Dr. Fontenot acknowledged that he never formally submitted a budget for the coroner's office to the police jury, but that, year after year, he and the police jury would "work it out." Dr. Fontenot had a staff of two, comprised of his personal secretary and one investigator. The duties which could not be performed by Dr. Fontenot and his limited staff were contracted out to other qualified practitioners. Dr. Fontenot kept the coroner's office functioning for approximately seventeen years, receiving only $200.00 to $300.00 a month for operational expenses and a "salary" of $750.00 a month, up from $250.00 a month when he began serving in 1978.
After nearly seventeen years of holding the office of coroner, Dr. Fontenot decided not to run for re-election after the completion of his final term. Hence, in the Fall of 1995, Dr. Perron ran unopposed for the office of Coroner in Evangeline Parish. Scheduled to take office on March 25, 1996, Dr. Perron began meeting with the Evangeline Parish Police Jury to establish a budget for the next fiscal year. It was Dr. Perron's contention that the coroner's office had been, and was, inadequately funded by the police jury and that a substantial increase in funding was needed in order for the coroner's office to properly function. In March of 1996, Dr. Perron submitted a budget to the police jury totaling $120,919.00. Within this budget Dr. Perron made requests for a $39,740.00 salary, which included health insurance and retirement benefits; approximately $40,000.00 in salaries for a deputy coroner, assistant coroner, investigator, and secretary; and the remaining amount for insurance, transportation, and other office expenses. The police jury rejected Dr. Perron's budget, reasoning that it had only budgeted $30,000.00 for the operation of the coroner's office the prior year, and thus, a request for four times that amount was unnecessary and excessive.
On March 28, 1996, three days after officially taking office, Dr. Perron petitioned for a writ of mandamus to compel the police jury to appropriate the requested funds for the coroner's office. The matter was set for hearing on June 6, 1996. However, on May 8, the trial court issued a Per Curium opinion staying all further proceedings in the matter pending a ruling by the appellate courts in the factually and legally similar case entitled "David L. Carriere, Coroner v. St. Landry Parish Police Jury." The trial court recognized that David L. Carriere, an attorney who ran unopposed for the office of coroner in St. Landry Parish, and who was also counsel for Dr. Perron in the instant matter, had previously filed a mandamus action on March 12, 1996, seeking to compel the St. Landry Police Jury to properly fund its coroner's office and which matter was then pending on appeal before this court. See Carriere v. St. Landry Parish Police Jury, 96-641 (La.App. 3 Cir. 4/9/97), 693 So.2d 1201, writs granted, 97-1914 (La.9/26/97), 701 So.2d 963, 97-1937 (La.9/26/97), 701 So.2d 963, affirmed in part and reversed in part, 97-1914, 97-1937 (La.3/4/98), 707 So.2d 979. The parties stipulated that the issues raised in the Carriere case would be controlling in this matter once decided by the appellate *519 and/or the supreme court and, thus, warranted a stay of the proceedings.
On December 6, 1996, seven months after the trial court issued the stay, Dr. Perron filed a motion for interim relief. In his motion, Dr. Perron claimed that he had served as coroner for eight months without personal compensation, reimbursement of personal expenses, mileage expenses, payment for his deputy coroner and investigators, or reimbursement for legal expenses incurred in pursuing his claim against the police jury. A hearing was held on December 6, after which, the trial court granted the motion in favor of Dr. Perron. The trial court rendered oral reasons for judgment ordering the police jury to pay Dr. Perron: 1) an interim allowance, in lieu of a salary, in the amount of $1,000.00 per month commencing March 25, 1996; 2) a $250.00 monthly car allowance; 3) $406.07 in personal expenses; and 4) $50.00 a month as an allowance for future expenses. The trial court further ordered the parties to work together to establish an agreeable rate of compensation for the two investigators retained by Dr. Perron and deferred any ruling as to attorney's fees for later proceedings. Lastly, the court decreed that in the event the police jury elected not to pay Dr. Perron the interim allowance ordered, he would be relieved of his official duty as coroner. On December 10, 1996, the police jury passed a resolution to pay Dr. Perron in accordance with the trial court's judgment.
Dr. Perron alleges that due to the lack of cooperation from the police jury, the efforts to negotiate salaries for his two investigators were unsuccessful. As a result, Dr. Perron filed a motion and order to establish interim salaries for the investigators on January 24, 1997. A hearing on the matter was held on March 6, 1997, at which the trial court ordered the police jury to pay $1,000.00 a month to Robert Guillory as investigator, and $2,000.00 a month to Maureen Sonnier as investigator and office manager. In setting the investigators' salaries, the trial court recognized that it had ordered the same or higher salary for the investigators than the coroner himself. Accordingly, it ordered a second hearing to take up that matter at a later date. Thereafter, in accordance with that judgment, the police jury passed a resolution on March 10, 1997, authorizing the payment of the interim salaries.
A subsequent hearing was conducted March 20, 1997, to discuss the coroner's salary, the police jury's obligation to pay the coroner's malpractice insurance, as well as payment of other alleged necessary operational expenses.
In its reasons for judgment filed July 8, 1997, the trial court affirmed the salaries of the investigators and ordered the police jury to pay Dr. Perron an annual salary of $25,000.00 retroactive to his taking office on March 25, 1996. The trial court found that the coroner's salary was reasonable in light of proposed legislation that was pending in the state legislature at that time, which would have increased salaries for coroners in rural parishes to $25,000.00.[1] Also in the July 8 judgment, the trial court left the issue of whether Dr. Perron was entitled to attorney's fees undetermined and granted the parties further time to brief the issue. On January 8, 1998, the trial court issued judgment in favor of Dr. Perron and ordered the police jury to pay $11,519.90 in attorney's fees and expenses. The trial court determined that the attorney's fees were incurred out of necessity for the function of the coroner's office and, thus, under the applicable statute, the police jury was responsible for the payment of the fees as necessary or unavoidable expenses.
The police jury continued to abide by the trial court's interim judgments until December of 1998, and at that time passed a resolution to "change the manner of funding for the Evangeline Parish Coroner's Office from a salary basis to a fee *520 only basis effective January 1, 1999." The police jury took the position that determining the type of compensation for the coroner was within its discretion when setting that office's budget. On January 15, 1999, Dr. Perron filed an "amending petition for a temporary restraining order, injunctive relief, and writ of mandamus," seeking to restrain the police jury from imposing the new fee-based salary. The trial court signed the temporary restraining order the same day as its filing. Through agreement between the parties, the change in salary was never implemented. However, this left the coroner's office without a formal budget for the 1999 fiscal year.
On January 19, 1999, Dr. Perron filed a "second supplemental amending petition for a temporary restraining order," seeking a court order restraining the effect of the resolution and to direct the police jury to continue paying the salaries of the coroner and his staff. The trial court granted the temporary restraining order and set a hearing on the matter for February 19. On January 27, 1999, on the motion of the police jury, the trial court dissolved the restraining order, but ordered that the police jury pay Dr. Perron $1,000.00 a month in salary and $1,000.00 a month for the ancillary personnel during the pendency of the proceedings.
Thereafter, a hearing was conducted to determine whether the previous coroner was a salaried or fee-based coroner, the amount of the prior coroner's compensation, and whether the trial court could have legally ordered an increase in the amount of compensation. In written reasons for judgment signed March 16, 1999, the trial court ruled that the previous coroner of Evangeline Parish was a salaried coroner who had received $1,100.00 a month. The court also found that, in accordance with the supreme court's decision in the Carriere case, the trial court was without power to order an increase in the coroner's salary to $25,000.00 a year. A judgment signed on May 18, 1999, reiterated the findings of the court as stated in the March 16 written reasons; held that the police jury was responsible for paying all necessary and unavoidable operational expenses as detailed in the Carriere case; and, further denied Dr. Perron's request for a writ of mandamus ordering payment of the salaries for his ancillary personnel.
Upon his belief that the May 18 judgment failed to resolve all of the issues between the parties, Dr. Perron filed a "motion for new trial," outlining several unresolved issues which needed to be decided in a final judgment. The motion was granted, and the court accepted briefs on the issues instead of conducting a formal hearing. The trial court rendered a judgment on these issues on November 17, 1999. The court held that Dr. Perron was entitled to past wages of $1,083.00 per month from July 8, 1997, through August 31, 1997, and from January 1, 1999, through March 16, 1999. Likewise, the court determined that Dr. Perron was entitled to $470.33 for the pay period of December 25-31, 1998. These amounts were owed because the court determined that either the police jury did not pay or failed to fully pay Dr. Perron's salary as set by the court's interim judgments. Additionally, the court determined that the police jury was in fact responsible for paying the salaries of the coroner's ancillary personnel retroactive to the date they were hired, to the date of their termination, less any amounts the police jury paid during the interim. It was also declared that the police jury was responsible for withholding all taxes from the salaries of all employees of the coroner's office. Finding that the court did not have sufficient evidence to consider all the issues before it, the trial court ordered a subsequent hearing on the remaining issues of whether the police jury owed educational seminar expenses, the payment of a monthly automobile allotment, and to further determine an amount of additional attorney's fees owed.
A hearing on these issues was set for January 26, 2000. Prior to the hearing on *521 January 10, the police jury filed peremptory exceptions of res judicata, no cause of action, and failure to join an indispensable party, and a motion for summary judgment. The trial court denied all relief requested by the police jury and proceeded to conduct a hearing on the remaining issues. A "final judgment" was rendered April 20, 2000, which ordered the police jury to pay: 1) $4,340.02 to Dr. Perron for unpaid salary during his term; 2) unpaid salaries for the ancillary personnel in the amount of $11,066.67 to Robert Guillory, $18,700.00 to Maureen Sonnier, $112.90 to Danzel Marcantel, Sr. and Ashley A. Solieu, each; 3) $3,800.00 to Dr. Perron for personal expenses; 4) up to $3,750.00 in transportation expenses; and 5) $38,519.00 in attorney's fees, which included the previous award of $11,519.00.
It is from this final judgment that both parties have appealed assigning several errors in the trial court's ruling.

Discussion
We begin by noting one difficulty presented by this matter is the length of time it has taken for this action to reach a conclusion in the trial court. As is evident by the procedural history outlined above, what started as a mandamus action in March of 1996, has evolved into four years of litigation involving hearings, rehearings, several partial or interim judgments and with one eventual comprehensive "final judgment" in April of 2000. As the trial court explained in its reasons for judgment dated March 27, 2000, in the name of "judicial economy," it had over the last four years literally "piecemealed this case to death." It is apparent that after the numerous hearings and rehearings the trial court became frustrated with trying to devise an equitable solution to this legal conflict being waged between the two political bodies, while waiting for guidance from this court and the supreme court on the legal issues, and at the same time recognizing the necessity for keeping the coroner's office adequately funded so that it could continue to perform its mandatory duties for the Parish of Evangeline. Now, after four years of litigating this writ of mandamus, Dr. Perron's term of office has expired and he is no longer Coroner of Evangeline Parish, having been succeeded by Dr. Fontenot in March of 2000. To our knowledge, Dr. Fontenot has not chosen to join this action. Thus, we limit our review to the issues as they were presented to the trial court and address the parties in their capacity as they were at the time the writ of mandamus was filed.

New Trial
The police jury begins by alleging that the trial court erred in granting Dr. Perron's motion for new trial filed after the May 18, 1999 judgment. It argues that the case had been completely decided and there was no new evidence to be considered, thus, no need for a new trial.
La.Code Civ.P. art. 1973, states: "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." The trial court explained in its reasons for granting the motion that "justice would best be served by making sure that we have left `no stones unturned' ...." The court went on to address nine issues that were directly pertaining to its May 18 judgment. Considering the trial court's desire to address any and all issues that existed between the parties in an attempt to reach finality in this matter, we cannot say that the trial court abused its much discretion in granting the "new trial." We find this assignment of error meritless.

Coroner's Salary
The police jury asserts that the trial court erred in finding that the Coroner's Office of Evangeline Parish operated on a salary only basis and that Dr. Perron is a salaried coroner. The police jury alleges that Dr. Perron is compensated on a salary-plus-fees basis. The parties vigorously argue this issue, since under the compensation scheme set forth in La.R.S. 33:1551 et seq., if a coroner receives certain fees for his services, then the coroner is *522 responsible for compensating its ancillary personnel, such as deputy coroners and/or investigators, out of the fees collected. However, if the coroner is determined to be salaried only, then it is the police jury that is responsible for paying the coroner's ancillary personnel.
In Carriere, the supreme court analyzed the two statutory provisions regarding compensation for coroners, La.R.S. 33:1556[2] and 33:1559[3]. The supreme court explained that "La.R.S. 33:1556(A) sets out a list of fees for various services provided by coroners and limits the collection of these fees to coroners operating on a `fee basis'" whereas La.R.S. 33:1559 discusses "extra compensation" for coroners. Carriere, 97-1914, pp. 5-6, 707 So.2d at 982 (footnote omitted). When both articles are read in pari materia, it appears the legislature intended for there to be three different methods for a parish governing authority to compensate coroners: 1) a salary; 2) a salary plus the fees enumerated in La. R.S. 33:1556(A); or 3) fees only. The supreme court stated that the decision as to which of the three forms of compensation that will be utilized "has always been, and continues to be, at the discretion of parish governing bodies." Id. at 9, 984.
In the case before us, neither party has provided sufficient evidence to clearly establish that prior to Dr. Perron taking office, the police jury formally set forth in a resolution or otherwise the exact method of compensation being implemented in Evangeline Parish. Therefore, it was left to the trial court to determine, by reviewing what had been the customary method of compensating the coroner, what compensation method was being utilized in Evangeline Parish.
Dr. Fontenot testified at the hearing on this issue that when he first took office, the police jury paid him a salary of $250.00 a month. Soon thereafter, the police jury, upon Dr. Fontenot's request, doubled the *523 salary to $500.00. Then again, in the mideighties, the police jury raised the salary to $750.00, where it remained until his term expired in March of 1996. Dr. Fontenot further explained that he also received a $300.00 payment each month from the police jury for office expenses. Dr. Fontenot testified that he was never required to submit an itemized bill for the office expenses and that it was basically within his discretion on how that money would be allocated. He maintained that most months the $300.00 expense payment would be used to compensate his investigator, but that there were no separate funds for other staff or office equipment other than the $300.00. However, Dr. Fontenot did testify that in addition to his salary he billed the police jury on a case-by-case basis for serving on sanity commissions, examining parish prisoners, and examining police jury employees. He claimed that all checks received from the police jury for performing these services were deposited into his personal medical corporation's account and that he considered these fees separate from his salary as coroner.
After hearing Dr. Fontenot's testimony, the trial court determined that Dr. Fontenot was a salary-based coroner, receiving a salary of $1,100.00 a month. The trial court reasoned that in addition to the $750.00 "salary," the "$350.00" a month Dr. Fontenot received for his "out of pocket expenses," which he was not required to account for, should also be considered salary. Thus, the trial court determined the entire $1,100.00 a month to be the coroner's salary.
While we find no clear error in the determination by the trial court that Dr. Fontenot was a salaried coroner, we disagree on the amount of the salary. Dr. Fontenot's testimony is clear that in his final term of office he was paid a salary of $750.00 a month. He explained that this amount was paid under his social security number and reported by him as taxable income. Neither party disputes the $750.00 a month was paid in compensation for Dr. Fontenot's work as coroner. Where we find error though, is in the trial court's inclusion of the "$300.00" of office expenses as salary. We first note that the trial court made a factual error in stating that Dr. Fontenot was paid "$350.00" instead of the "$300.00" a month as testified to by Dr. Fontenot. The actual $300.00 amount is also evidenced by a copy of the police jury's checks written to Dr. Fontenot, which are present in the record. Moreover, we find it erroneous for the trial court to have included the $300.00 as salary. The $300.00 was written in a separate check each month from the $750.00 salary and deposited under Dr. Fontenot's medical corporation's separate tax identification number. Dr. Fontenot did not consider this part of his salary and did not claim it as such. Therefore, we find that at the time Dr. Perron took office in March of 1996, the Coroner of Evangeline Parish was a salary-based coroner receiving a salary of $750.00 a month.
We reject the police jury's argument that since Dr. Fontenot collected certain fees as coroner, in addition to his salary, it should be held that he was compensated as a salary-plus-fees coroner. Although Dr. Fontenot did testify he billed and received fees from the police jury for issuing certain duties, the police jury has not established that the fees were collected for performing services as set forth in La.R.S. 33:1556(A). The supreme court made it clear that the fees collected by the coroner must be defined in La.R.S. 33:1556(A), to apply to a fee-based or salary-plus-feebased coroner.
Additionally, we deny the police jury's assertion that Dr. Perron chose to be compensated on a salary plus fees basis by accepting fees for issuing coroner's emergency certificates (CEC) during his term in office. While we find that the fees generated from the issuance of CEC's are fees for services as provided for in La.R.S. 33:1556(A)(3), we conclude the mere acceptance of this fee by a salaried coroner, in error or otherwise, would not solely *524 change the entire method of compensation for the coroner.[4] Again, as the supreme court explained, it is the police jury's decision to establish the method of compensation, it is not the choice of the coroner. See Carriere, 97-1914, 707 So.2d 979.

Payment of Coroner's Salary
In its third assignment of error, the police jury alleges that it was error for the trial court to order it to pay Dr. Perron an interim salary in excess of what the previous coroner was paid, and to also order the police jury to pay Dr. Perron $4,340.02 in arrearages. Dr. Perron has also appealed on this issue arguing that it was error for the trial court to order a reduction in his salary from $2,083.33 a month ($25,000.00 a year) to $1,100.00. Dr. Perron asserts that once the police jury voluntarily began paying him a $25,000.00 salary in accordance with the trial court's judgment on July 8, 1997, it could not thereafter lower his salary below that amount. The court's order to do so, he argues, is in violation of La. Const. art. 5, § 31, which reads, in part: "The salary and retirement benefits of [a] ... coroner, ... shall not be diminished during his term of office."
Initially, we conclude that it was erroneous for the trial court to order the police jury to pay Dr. Perron a $25,000.00 salary. As explained by the supreme court, it is beyond the power of the judicial branch of government to place the responsibility for funding state officials on parishes, and likewise, the extent of that funding, unless there already exists a clear legislative mandate to do so. Carriere, 97-1914, 707 So.2d 979. See also Reed v. Washington Parish Police Jury, 518 So.2d 1044 (La.1988). In this instance, the legislature has mandated that a coroner be elected in each parish. La. Const. art. 5, § 29; La. R.S. 33:1551. However, except in the case of extra compensation as defined in La. R.S. 33:1559, it has left the method of compensating, and the amount of compensation, to the discretion of the individual parish governing authority. Consequently, it is the function of the legislative branch, not the judiciary, to adequately compensate coroners.
In finding the trial court erred by increasing Dr. Perron's salary, we also find it was erroneous to order the police jury to pay $4,340.02 in arrearages. Further, we find no merit in Dr. Perron's assertion that the trial court's order reducing the previous salary of $2,083.33 a month to $1,100.00 a month was in violation of La. Const. art. 5, § 31. As discussed above, the coroner's salary at the time Dr. Perron assumed office was $750.00 a month, and the police jury could not have paid Dr. Perron any less than this amount once he began his term of office without violating La. Const. art. 5, § 31. Therefore, since Dr. Perron's salary was never reduced below the $750.00 a month salary, we find neither the police jury nor the trial court violated the applicable constitutional provisions regarding the payment of Dr. Perron's salary.

Ancillary Personnel
Furthermore, the police jury alleges that the trial court erred in ordering it to pay the salaries of the coroner's ancillary personnel. The police jury concedes in its brief to this court that if Dr. Perron is found to be a salaried coroner, then it would be in fact responsible for paying the salary of the coroner's ancillary personnel, but their salary could only be determined by an "arrangement with the police jury" and could not be set by the trial court.
La.R.S. 33:1555 sets forth the provisions for appointing and compensating coroner's staff, it states in pertinent part:

*525 A. Each coroner may appoint one or more deputy or assistant coroners to perform his duties, who need not be residents of the parish.... They shall possess the same qualifications as the coroner and be paid by the coroner appointing them or by arrangement with the parish governing authority if the coroner is on a salary basis....
B. The coroner may appoint any necessary secretaries, stenographers, clerks, technicians, investigators, official photographers, or other helpers. The salaries of these employees shall be paid by the coroner out of his fees or by arrangement with the parish governing authority if the coroner is on a salary basis.
The record reflects that Dr. Perron attempted to discuss the salaries of his staff on more than one occasion, to no avail. It is also evident in the record that not until after the trial court had ordered the two parties to work together to set the salaries, and they failed to do so, did the court take it upon itself to determine reasonable salaries. As a panel of this court assessed in its examination of the Carriere case, while the applicable statute indicates that the coroner's appointees shall be paid by arrangement with the parish governing authority if the coroner is on a salary basis, it does not indicate what happens when the coroner cannot reach an arrangement for the compensation of its employees. See Carriere, 96-641, 693 So.2d 1201. We find that considering the numerous failed attempts to reach a compromise as to this issue, it was not incorrect for the trial court to determine a reasonable salary for the coroner's appointed deputy coroner, investigators, and secretary, and to order the police jury to pay the legislatively mandated salaries under the writ of mandamus. The police jury cannot avoid its duty to reasonably compensate the coroner's appointees when it has chosen to pay the coroner on a salary basis. Nor should the police jury be able to avoid compensating the ancillary personnel by frustrating the negotiation process. We find no error in the trial court's judgment ordering the police jury to pay the salaries of the coroner's ancillary personnel.

Operational Expenses
In this assignment of error, the police jury argues that the trial court erred by ordering it to pay $3,800.00 in educational seminar expenses incurred by Dr. Perron and his staff and up to $3,750.00 for travel expenses (gasoline, oil changes, and mileage) incurred by Dr. Perron while performing his duties as coroner. The trial court found these expenses to be "reasonable and necessary" expenses which required the police jury to pay for them.
La.R.S. 33:1556(B) provides:
(1) All necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the coroner's office shall be paid by the parish when such expenses are certified by the coroner as being necessary or unavoidable.
In review of this issue, we find no error in the trial court's determination that travel expenses and training seminars are necessary expenses incurred to insure that the coroner's office continues to operate properly. The coroner is required to travel to perform the mandated duties of the office, thus, making travel expenses necessary and unavoidable. If Dr. Perron can provide evidence of the travel expenses actually incurred, then he is entitled to reimbursement for those expenses up to the determined reasonable amount of $3,750.00.
We agree that continuing education and seminar training are also a necessary and unavoidable operational expense for the coroner's office. As Dr. Perron points out, forensic science and death investigation is extremely technical in nature. Continuous training and education in these fields is a means by which a coroner and staff can keep abreast of new advances in these areas. Examining these expenses under *526 the reasonableness standard, as we are instructed to do by the supreme court in Carriere, we find no abuse of discretion by the court in ordering the police jury to pay the requested $3,800.00.

Withholding Taxes
The police jury argues that it was error for the trial court to order it to withhold all federal and state taxes from the salaries of the coroner and his salaried employees. We find this assignment of error to be without merit. If a police jury chooses to compensate the coroner with a salary, as we have determined that it has done in this case, then it is required to adhere to all federal and state regulations regarding withholding taxes.

Attorney's fees
In this final assignment of error, the police jury asserts that it was error for the trial court to order it to pay $38,519.00 in attorney's fees. The police jury argues that it is not responsible for these attorney's fees because the employment contract signed by Dr. Perron, as coroner, retaining Mr. David Carriere as legal counsel is null and void. It alleges that Dr. Perron, as a state official and quasiparish official, was entitled to free representation from the attorney general's office in this matter, and that if the attorney general could not represent him, Dr. Perron was then required to get approval from the attorney general's office to use private counsel, and that the amount of compensation for the private attorney should be equal to the pay rate set by the state. The police jury alleges that representation by the attorney general is required under La.R.S. 42:261(A)[5], which read at the time the employment contract was entered into, that:
Except as provided by Subsection C of this section or as otherwise provided by law, the attorney general for the parish of Orleans and the district attorneys of the several judicial districts other than the parish of Orleans, shall ex officio and without extra compensation, general or special, be the regular attorneys and counsel for the parish governing authorities, parish school boards, and city school boards within their respective districts and of every state board or commission domiciled therein, the members of which, in whole or in part, are elected by the people or appointed by the governor or other prescribed authority, except the state boards and commissions domiciled at the city of Baton Rouge, and all boards in charge or in control of state institutions.
We find the police jury's reliance on this provision, as well as La.R.S. 42:263 (requiring governing authorities and state boards to propose a resolution to the attorney general for approval prior to seeking special counsel), is misplaced. The office of the coroner is neither a governing authority nor a state board. "Coroners are members of the judicial branch of government, and although their jurisdiction is limited to the parish in which they hold office, coroners are state officials who perform state functions." Carriere, 97-1914, p. 4, 707 So.2d at 981; Mullins v. State, 387 So.2d 1151 (La.1980). A governing authority pertains to the body which performs the legislative function of the political subdivision. La.R.S. 39:1302. Being neither a state board nor governing authority, coroners are not controlled by the cited statues.
Secondly, the police jury argues that Dr. Perron is not entitled to parish funds in order to pay his attorney's fees because he has not submitted a request for the funds in an itemized budget document as required by the Louisiana Local Government Budget Act, La.R.S. 39:1301 et seq. It maintains that each independently *527 elected parish officer, including coroner, must submit a budget outlining its expenses for the "ensuing fiscal year." Therefore, the failure of Dr. Perron to submit a budget requesting the funds necessary to satisfy the amount of attorney's fees prior to incurring those fees, now bars Dr. Perron from collecting the fees from the police jury.
We disagree with the police jury that the coroner would be statutorily prohibited from requesting certain funds in his budget for the payment of attorney's fees incurred during the performance of his duties as coroner, and then once he receives the budgeted funds, in turn, allocating those funds toward the payment of the attorney's fees. However, we must emphasize again that it is not the function of the judiciary to mandate that the parish governing authority apportion such funds absent a clear expression by the legislature to do so.
The trial court reasoned that the attorney's fees incurred by Dr. Perron were mandatory expenses since the fees were "necessary or unavoidable" under La. R.S. 33:1556(B)(1), thus, it was able to order the police jury pay the fees under the writ of mandamus. As explained above, we find that in order for the fees to be mandatory under La.R.S. 33:1556(B)(1), these expenses must be "operational" expenses. The supreme court in Carriere denied Mr. Carriere's requests for funding to pay the salaries of a deputy coroner and a doctor on a contract basis. The supreme court reasoned that if the police jury was not required to pay these fees by statute, that Mr. Carriere could not avoid the result by certifying them as necessary or unavoidable operational expenses. Id. While we do not dispute the necessity of the hiring of an attorney in this matter, we do not find it to be an operational expense similar to office supplies, travel expenses, or education.
La.R.S. 33:1556(F) states:
F. Nothing herein shall be construed as prohibiting the payment by the parish or municipality of all necessary or unavoidable expenses certified by the coroner.
With this subsection, it seems the legislature created a general provision to include all necessary or unavoidable expenses, other than those covered by La. R.S. 33:1556(B)(1). Nevertheless, the supreme court held that this provision does not mandate that the "parishes or municipalities do anything." Carriere, 97-1914, p. 10, 707 So.2d at 984. Consequently, the trial court could not order the police jury to perform a duty which was not legislatively mandated.
In a similar case, Gongre v. Mayor and Bd. of Aldermen of Town of Montgomery, 98-677 (La.App. 3 Cir. 10/28/98), 721 So.2d 968, writ denied, 98-2954 (La.1/29/99), 736 So.2d 834, a panel of this court found it to be a violation of the constitutional requirement of separation of powers for a trial court to order a local government to allocate funds for the payment of attorney's fees incurred by a chief of police in a suit against a municipality. And although this court noted that the governing authority may on its own initiative appropriate the necessary funds, where there is no statutory authority to order the payment of the legal fees, the court is without power to make such an order. Id. Quoting Landry v. City of Erath, 628 So.2d 1178 (La.App. 3 Cir.1993), writ denied, 94-0275 (La.3/25/94), 635 So.2d 235, this court explained, "the decision of how to spend public monies is the very heart of the legislative function" and "[b]y ordering a legislative body to appropriate monies, we would be deeply entangling ourselves in a very serious separation of powers issue." Gongre, 98-677, p. 8, 721 So.2d at 972 (alteration in original). As we find the same conflict to be present in this case, we conclude that the ruling of the trial court in this respect must be reversed.
Due to our disposition of this issue, we deny Dr. Perron's request that we order *528 the payment of additional attorney's fees on appeal.

DECREE
For the reasons assigned above, we reverse the trial court's findings as to Dr. Perron's entitlement to unpaid salary and as to its award of attorney's fees. In all other respects the judgment of the trial court is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] See La. House Bill 1634, 23d Leg., Reg. Sess. (1997).
[2] La.R.S. 33:1556, provides in pertinent part:

§ 1556. Fees for coroner's services
A. (1) The coroner shall receive:
(a) For every investigation, including issuing necessary papers and reports, fifty dollars;
(b) For viewing bodies, fifty dollars;
(c) For the performance of an autopsy, a fee of not less than two hundred fifty dollars no more than three hundred dollars,...;
(d) For attendance or testimony in any case in court in matters arising from his official duties, seventy-five dollars per day per case;
(e) A fee of fifty dollars for papers issued in each interdiction case or commitment of mental or incompetent case.
. . . .
(3) The coroner shall receive a reasonable fee or compensation, as agreed to by the coroner and the governing authority of the parish or municipality, for any physical or mental examination or investigation when requested by the district attorney, any judge, sheriff, chief of police, or by any responsible citizen or resident when acting in good faith in an emergency and in the furtherance of the public good and safety.
(4) These amounts shall be in addition to any necessary expenses that may be incurred.
(5) The provisions of this Subsection shall only apply to coroners on a fee basis.
[3] La.R.S. 33:1559, states:

§ 1559. Extra compensation for corners
A. (1) Any coroner who is paid a salary or a salary and fees under the provisions of this Part, in addition, shall be paid five hundred forty-eight dollars per month by the state.
(2) Any coroner who is paid only fees under the provisions of this Part shall be paid five hundred forty-eight dollars per month by the state and may be paid an additional five hundred dollars per month by the parish governing authority.
B. The extra compensation for coroners payable by the state provided for in Subsection A of this Section shall be payable monthly by the state treasurer on the warrant of the coroners from funds appropriated by the legislature for this purpose.
C. The extra compensation for coroners which may be paid by the parish governing authority provided for in Subsection A of this Section shall be payable monthly by the parish governing authority on the warrant of the coroner. The funds for the parish portion of the extra compensation shall be carried as an item in the parish governing authority's annual budget.
[4] Dr. Perron argues that the fee for a CEC is mandated under the provisions of La.R.S. 28:53(G)(6), not La.R.S. 33:1556(A), and thus, should not be considered a fee for service. While the fee for performing a CEC is mandated in La.R.S. 28:53(G)(6), whether or not a coroner may accept that fee is determined by the compensation arrangement made with the parish governing authority.
[5] La.R.S. 42:261(A) was amended by Acts 1999, No. 384 § 1, to remove all reference to "attorney general." See Polkey v. City of New Orleans, 557 So.2d 405, 406 (La.App. 4 Cir.), writ denied, 559 So.2d 1375 (La.1990), wherein the court noted that the term "`Attorney General for the parish of Orleans,' is obviously a misnomer."