518 So.2d 1044 (1988)
Walter P. REED, As District Attorney for the Twenty-Second Judicial District Court, Parish of Washington,
v.
WASHINGTON PARISH POLICE JURY, et al.
No. 87-C-2468.
Supreme Court of Louisiana.
January 18, 1988.
Rehearing Denied February 11, 1988.
Walter P. Reed, Dist. Atty., Harry P. Pastuszek, Lane Carson, Stephen J. Caire, Asst. Dist. Attys., for applicant.
John N. Gallaspy, Bogalusa, for respondent.
E. Pete Adams, Baton Rouge, amicus curiae for The Louisiana District Attorneys Ass'n, Inc.
COLE, Justice.
This is a mandamus action by a district attorney to compel a police jury to reimburse his office for operational expenses. The issue presented is whether La.R.S. 16:6 imposes a mandatory duty on a police jury to fund the itemized expenses set forth in the statute. La.R.S. 16:6 provides:
Reimbursement for expenses; payment by police juries
The district attorneys of this state, the parish of Orleans excepted, shall be entitled to an expense allowance for salaries of stenographers, clerks and secretaries, and salaries or charges for special officers, investigators and other employees and an expense allowance for stationery forms, telephone, transportation, travel, postage, hotel and other expenses incurred *1045 in the discharge of their official duties.
The police juries of the various parishes of the state of Louisiana are hereby authorized to pay from their general fund any of the items of expense, as provided for herein, incurred by the several district attorneys of this state when acting in their official capacities.
We hold La.R.S. 16:6 places a mandatory duty on the police jury to fund the aforesaid expenses of the district attorney's office. Accordingly, we reverse the judgment of the court of appeal and reinstate the judgment of the trial court.
Walter Reed is the district attorney for the Twenty-Second Judicial District, comprised of Washington and St. Tammany Parishes. In late 1985, Reed submitted a budget request to the Washington Parish Police Jury listing the anticipated expenses of his Washington Parish office for the 1986 fiscal year. This was the customary process employed. Although Reed submitted a budget request of $145,025.00, to cover the office's 16:6 expenses, the police jury budgeted only $42,246.12.
In response to the police jury's failure to fund adequately the 16:6 expenses of his office, Reed brought this suit on March 4, 1986. He sought a declaration that 16:6 imposed a mandatory duty on the police jury to provide funding and he sought a writ of mandamus to compel the police jury to perform this duty.
A judgment was not rendered by the trial court until March 13, 1987. In the interim, Reed was required to obtain the money to pay the 16:6 expenses from other sources. The 16:6 expenses for the 1986 fiscal year were paid from the following sources:

(1) Washington Parish Criminal
 Court Fund........................ $ 78,212.64
(2) District Attorney's 6% and Special
 Funds............................. 14,550.68
(3) District Attorney's Fee Fund (La.
 R.S. 16:15)........................ 4,091.24
(4) Washington Parish General Fund..... 45,070.87
 _________
 TOTAL ............................. $141,925.43

The trial court held the police jury has a mandatory duty under 16:6 to fund the reasonable 16:6 expenses of the district attorney's office. The court ruled the request by Reed was not unreasonable, and stressed that the police jury did not contend it lacked sufficient funds to pay its statutorily mandated expenses. Accordingly, the trial court issued a writ of mandamus ordering the police jury to pay Reed $96,854.56. This award represented the difference between the amount actually funded by the police jury for 1986 and the amount secured by Reed from other sources to pay the 16:6 expenses of his office.
The court of appeal reversed. Reed v. Washington Parish Police Jury, 515 So.2d 635, (La.App. 1st Cir.1987). It held a police jury has discretion under R.S. 16:6 to provide funding for the stated expenses of the district attorney's office. Consequently, the Court ruled Reed was not entitled to a writ of mandamus.
Reed sought writs in this court claiming the police jury is constitutionally and statutorily compelled to fund the expenses of the district attorney's office. Because we find the police jury is statutorily required to fund the 16:6 expenses of the district attorney's office, we need not decide whether it is constitutionally compelled to do so.
To resolve the issue in this case, we must determine the proper construction to be given the entirety of R.S. 16:6. The first paragraph of 16:6 provides for a mandatory expense allowance for district attorneys. The second paragraph states the police jury is "authorized" to pay from its general fund any of the expenses "as provided for herein." The word "authorized" is susceptible to two interpretations, one mandatory, and one permissive. It may be interpreted as either empowering the police jury to act, or as a direction to the police jury to act. Thus, it becomes important to ascertain the intent of the legislature. In so doing, we are guided by the familiar principles of statutory construction. We shall review the language employed in 16:6, the history of 16:6, and other provisions on the same subject matter in order to determine the intent of the legislature.

*1046 LANGUAGE OF LA.R.S. 16:6
It is a fundamental principle of statutory construction that statutes must be interpreted in their entirety. The meaning of a word in a statute must be determined in light of the statute as a whole. There is a presumption that the legislature enacted 16:6 for some definite purpose and we must endeavor to construe it so as to give it effect and accomplish the purpose for which it was enacted. When a statute is susceptible of two interpretations, a court must choose the one which affords a reasonable and practical effect to the entire act over one which renders part of it meaningless or useless. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La.1980); J.M. Brown Const. Co. v. D & M Mechanical Con., Inc., 275 So.2d 401, 404 (La. 1973); Chappuis v. Reggie, 222 La. 35, 62 So.2d 92, 95 (1952); Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303 (1942).
In 1938, when the legislature first enacted 16:6, it stated the purpose of the act was to provide that the district attorneys of this state "shall be reimbursed" for expenses incurred in their official duties. 1938 La. Acts No. 20. Since its origin in 1938, the first paragraph of 16:6 has provided for a mandatory expense allowance for district attorneys. This is evidenced by the use of the phrase "shall be entitled to an expense allowance" appearing in every version of 16:6 from 1938 to the present. The second paragraph of 16:6, provides that the police jury is authorized to pay the expenses "as provided for herein." This language refers to the mandatory expense allowance. It would make little sense for the legislature to create a mandatory expense allowance and then tell the providers of the fund they were free to fund that expense allowance or not. The court of appeal was incorrect in reading the two paragraphs in isolation, rather than in their entirety. A reading of the first paragraph of 16:6 as mandatory, and the second paragraph as discretionary, renders the first paragraph basically meaningless. The legislature could not have intended such a result when it used the word "authorized" in the second paragraph.
In addition, we believe the choice of the word "authorized" in the second paragraph of 16.6 was nothing more than a legislative recognition of the principle that a police jury is a creature of the state and possesses only those powers conferred by the state's constitution and statutes. La. Const. art. VI § 7(A); Rollins Environmental Serv. v. Iberville Parish, 371 So.2d 1127, 1131 (La.1979). In reference to the delegation doctrine, this court stated in State v. Jordan, 207 La. 78, 20 So.2d 543, 545 (1944):
Parishes and municipal corporations of this state are vested with no powers, and possess no authority, except such as are conferred upon, or delegated to, them by the Constitution and statutes.
Thus, unless the legislature vested the police jury with authority to act, it would be powerless to act.
A reading of the language employed by the legislature, in the context of the statute as a whole, leads us to the conclusion the term "authorized" is mandatory. It is only if both paragraphs are read as mandatory that effect can be given to the entire statute. However, our search to determine the legislature's intent does not end with a review of the language of 16:6. Rather, we address whether the history of 16:6, or the fact the legislature created a number of funding sources for the expenses of the district attorney's office, compels us to reach a different conclusion.

HISTORY OF LA.R.S. 16:6
An analysis of the history of 16:6 reveals how the legislature intended to carry out its goal of providing the district attorneys with a mandatory expense allowance. When 16:6 was first enacted in 1938, it created a mandatory expense allowance for operating the district attorney's office to be funded by the state up to $1,200.00. 1938 La.Acts No. 20, §§ 1, 2. Ten years later, 16:6 was amended to increase the mandatory expense allowance to $2,500.00. 1948 La.Acts No. 488, § 2. In 1959, the legislature amended 16:6 to increase the expense allowance payable by the state to *1047 $5,000.00, and added the following language:
[I]n addition thereto, the police juries of the various parishes of the State of Louisiana are hereby authorized to supplement and pay from their general fund any of the items of expense, as provided for herein, incurred by the several district attorneys of this state when acting in their official capacities and where the total items of expense in the operation of the district attorney's office exceed the amount of five thousand dollars per year. 1959 La.Acts No. 113, § 17.
Finally, in 1973, 16:6 was amended and remains unchanged. Significantly, the amendment abrogated any fiscal responsibility for 16:6 expenses on the part of the state legislature. It deleted the word "supplement" as well as the requirement the expenses reach $5,000.00 before the police jury was "authorized" to pay the expenses. 1973 La. Acts No. 115, § 1.
We see that throughout the history of 16:6 the legislature envisioned the legislative branch of either state or local government would bear the primary responsibility for funding the expenses. Prior to 1959, the state legislature bore the entire responsibility for funding the 16:6 expenses. In 1959, the state legislature provided a set amount of funding to cover 16:6 expenses, and the police jury, the local legislative branch of government, was called upon to supplement and pay the expenses in excess of the statutory limit. In 1973, the state abandoned its role in funding the 16:6 expenses. We believe when the state legislature abandoned its fiscal responsibility, it intended to place the entire burden for funding the 16:6 expenses on the police jury.

ADDITIONAL SOURCES OF FUNDING
It is a well settled rule of statutory construction all laws dealing with the same subject matter must be construed in pari materia. La.Civ.Code art. 17. Thus, we construe 16:6 and all other laws on the subject in a manner which harmonizes the various provisions with each other. Smith v. Cajun Insulation, Inc., supra; Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984).
There are a number of statutory provisions which create special funds to be used by a district attorney in defraying the expenses of the office. La.R.S. 15:571.11[1] *1048 created the "Criminal Court Fund" (CCF) which is composed of fines and forfeitures resulting from violations of state law or parish ordinances. This fund is available to judges, district attorneys and sheriffs. It can be used for a wide range of expenses incurred by criminal courts. La.R.S. 15:571.11(A)(1)(a), (b). A district attorney may, after obtaining court approval, use revenues from the CCF to defray his 16:6 expenses, as well as other expenses related to his office. One-half of any surplus remaining in the fund at the end of the year goes to the parish general fund. La.R.S. 15:571.11(C)(1). In addition, La.R.S. 15:571.11(A)(2) provides for a special fund composed of fines and forfeitures resulting from violations of municipal ordinances. Originally, the district attorney was given six percent of this fund. However, in 1986, the legislature increased the amount to be remitted to the district attorney to twelve percent. 1977 La.Acts No. 591, § 2; 1986 La.Acts No. 956, § 1.
In 1986, the legislature provided district attorneys with two new sources of funding. La.R.S. 16:15 entitles the district attorney to use fees collected in prosecuting worthless check cases to defray the expenses of his office. La.R.S. 16:16 created a special account composed of a $10.00 cost assessed against every defendant who is convicted after trial, pleads guilty or forfeits a bond. The district attorney may use this fund in defraying the expenses of his office.
The court of appeal looked at the various sources of funding available to a district attorney and concluded the only reasonable construction of 16:6 is that it gives a police jury discretionary authority to allocate money from their general funds to pay the expenses of the district attorney's office. The court seemed concerned with "double funding" and reasoned that since the legislature provided district attorneys with various sources of funding, it could not have intended to require the police juries to fund the 16:6 expenses. The court also relied heavily on a 1960 amendment to the CCF. In 1960, the reference to 16:6 appeared in the CCF for the first time. The CCF was amended to provide that the funds in the CCF "shall be used or paid out in defraying the expenses of the criminal courts of the parish as provided in Louisiana Revised Statutes Title 13, Sections 692 and 1587 and Title 16, Section 6, upon motion by the district attorney and approval order of the district judge ..." La.Acts 1960, No. 236, § 1. Seizing upon the language "shall be used" the court of appeal reasoned that as of 1960, 16:6 gave the police jury discretionary authority to fund the district attorney's expenses exceeding $5,000.00; and the CCF authorized payment of the excess expenses from the fund if the police jury chose not to pay them. The effect of the court of appeal's reasoning is to make the CCF the primary source of funding where the state's funding left off, rather than local government.
We disagree with this construction. As a practical matter, the legislature could not have intended to require the district attorneys of this state to rely on funds such as the CCF for the primary source of revenues to operate their offices.
Because of the importance of the constitutional function performed by the district attorney's office, it is imperative that there be a reliable source of funding to ensure the effective operation of the office. The CCF is a fluctuating fund, and the amount available in the fund is subject to a number of factors. The size and location of the parish, as well as its character as urban or rural will significantly affect the amount of money available in the CCF. The CCF is also available to the sheriff and judges of the criminal courts, further impacting how much the district attorney is able to obtain from the fund for operating his office. In addition, the district attorney cannot get any funds without court approval. We do not believe that the legislature could have intended to require the district attorneys of this state to depend on the CCF as the primary source of funds to operate their offices.
Instead, we view the CCF, the twelve percent fund, and provisions such as R.S. 16:15 and 16:16 to be nothing more than a recognition by the legislature of the increased cost of operating the district attorney's office. These additional sources *1049 were never intended to wrest the primary responsibility for funding the 16:6 expenses from the shoulders of the legislative branch of government. Characteristics such as discretionary usage, instability of amounts available, allocation among several officers, the need for court approval, negate the availability of these funds as a primary source to insure the basic function of the district attorney will not be impaired. The fact that these alternate funds exist suggests a need for cooperative intergovernmental relations. The lack of such cooperation, and the problems which result, addresses itself to the legislature or to the political arena for resolution.

CONCLUSION
The legislature enacted 16:6 to create a mandatory expense allowance for district attorneys to assure the operation of their offices. After analyzing the history and language of 16:6, reviewing other available sources of funding and considering practical implications of an alternative construction, we conclude 16:6 creates a mandatory duty on the part of the police jury to fund the 16:6 expenses of the district attorney's office in their entirety. By amending 16:6 to authorize police juries to fund the office, the legislature did not intend to give the police jury discretion to fund the 16:6 expenses. Rather, the legislature directed the police jury to do so. We hold, however, that the police jury's duty to fund the 16:6 expenses is limited by the standard of reasonableness. This limitation comports with traditional interpretations of the doctrine of inherent powers afforded the judicial branch of government and satisfies the system of checks and balances underpinning a republican form of government with its separation of powers. Accordingly, the budget request of the district attorney must be legitimate in that it is related to the function of his office. Also it must be quantitatively reasonable.
The trial court held that the funding request by the district attorney was reasonable. After reviewing the record, we find no error in this ruling. The police jury is compelled under R.S. 33:2922(A) to pay its statutory charges first. A writ of mandamus is an appropriate device to compel the police jury to perform its mandatory duty to fund the reasonable expenses of the district attorney. Accordingly, we reverse the court of appeal's judgment and reinstate the judgment of the trial court.
COURT OF APPEAL REVERSED; TRIAL COURT JUDGMENT REINSTATED.
DENNIS, J., concurs with reasons.
DIXON, C.J., dissents.
DENNIS, Justice, concurring.
Although the majority is undoubtedly correct in stating that at the time of the enactment of La.R.S. 16:6 most local governments were "creatures of the state" and therefore needed legislative authority to perform certain functions, it must be kept in mind that under the 1974 Louisiana Constitution a home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter. Francis v. Morial, 455 So.2d 1168, 1171 (La.1984); City of New Orleans v. State, 426 So.2d 1318, 1322 (La.1983) (concurring opinion).
NOTES
[1] La.R.S. 15:571.11 provides, in pertinent part:

A.(1)(a) All fines and forfeitures imposed by district courts and district attorneys conviction fees in criminal cases and prosecutions for violations of state law or parish ordinances, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special "Criminal Court Fund" account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out in defraying the expenses of the criminal courts of the parish as provided in R.S. 13:1587 and R.S. 16:6, in defraying the expenses of those courts in recording and transcribing of testimony, statements, charges and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, for expenses and fees of attorneys appointed to represent indigent persons under any public defender program, and for other expenses related to the judges of the criminal courts and the office of the district attorney; however,
(b) The sheriffs throughout the state, the parish of Orleans excepted, shall retain twelve percent of the amount of fines collected or the amount of bonds forfeited to go into the sheriff's general refund in each parish; and, an additional twelve percent of the amount of fines collected and the amount of bonds forfeited shall be transmitted to the district attorney of the judicial district to be used by the district attorney in defraying such expenses of his office as in his discretion may be necessary.
(2) All fines and forfeitures imposed by district courts and collected by the sheriff or executive officer of the court for violations of municipal ordinances shall be disbursed as follows:
(a) Twelve percent thereof shall be remitted to the office of the district attorney;
(b) Twelve percent shall be remitted to the sheriff's general fund; and
(c) The remainder shall be transmitted to the municipality for deposit in its treasury.
* * * * * *
C. (1) One-half of any surplus remaining in the special account or fund on December 31 of each year shall be transfered to the parish general fund. No money shall be paid out of the special account except upon the order or warrant of the district judge and district attorney as above provided.