Dear Mr. Allen:
You have requested an opinion of the Attorney General regarding payment of certain expenses, relating to your duties as Coroner for the Parish of Vernon, as well as the negotiation between you, the elected Coroner, and the Vernon Parish Police Jury of the salary to be paid the Coroner. Your request has been forwarded to me for response.
Your specific questions are as follows:
 1. "I was elected Coroner and took office on March 27, 2001. Prior to taking office, I purchased a 2001 Taurus for the sole purpose of conducting business as Coroner of Vernon Parish.
 According to LSA 33:1556.B. (1) All necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the coroner's office shall be paid by the parish when such expenses are certified by the coroner as being necessary or unavoidable. The Police Jury has told me that they can pay mileage for the use of my car on V.P.C.O. business, but I have been told that I would only receive mileage since the first of the year and not the entire term. This has been ongoing since my taking office. My question that I need an Opinion is:
 Do I receive mileage since I took office or since January 1st, 2001, or what type of reimbursement am I entitled to for the use of my car?
 The statute clearly states All Necessary and Unavoidable expenses, be paid by the police jury."
In a later correspondence, this request was modified to read: "Shouldn't I receive mileage from the date that I took Office on March 27, 2001 or should the Police liable to pay my mileage expense since January 1st of this year only? (NOTE: the police jury has been paying the mileage for the past two months, but will not pay me for the entire year dating from 3/27/01 to date that they started paying me the mileage expense.)"
 2. As far back as I can remember, the Parish Coroner has been paid $1,000.00 per month for a salary. When I approached the Jury about this, it was told to me that the pay was going to be the same as in the past. My question is:
 Does the Coroner and the Jury agree to the salaried amount or does the Jury set the amount on its own?"
You are correct that La.R.S. 33:1556(B) requires the parish to pay "All necessary or unavoidable expenses, including supplies incident to the operation and functioning of the coroner's office when such expenses are certified by the coroner as being necessary or unavoidable." This provision is not without limits, however. The Coroner does not have unbridled discretion to designate every expense a "necessary or unavoidable" one.
The Louisiana Supreme Court, in Carriere v. St. Landry Parish PoliceJury, 97-1914 (La. 3/4/98), 707 So.2d 979, extensively discussed and gave very specific guidance as to what "necessary or unavoidable" expenses must be paid by the parish governing authority. (This opinion was previously supplied to you and is also attached hereto). In that case, a lawyer qualified for, and was elected, Coroner for the Parish of St. Landry. He then brought a lawsuit against the St. Landry Police Jury seeking to compel the Police Jury to provide an annual coroner's salary and to fund the coroner's annual budget for every item he characterized as a "necessary or unavoidable" operating expense.
The Supreme Court specifically addressed the two questions posed in your opinion request. As to the "necessary or unavoidable" expenses, the Court literally examined the "necessary or unavoidable" expenses claimed in the lawsuit and, item-by-item, ruled whether the claimed expenses were "necessary or unavoidable." Mileage reimbursements were specifically approved as a "necessary or unavoidable" expense for a coroner acting in his official capacity. As the Supreme Court was so specific in detailing what should be considered "necessary or unavoidable", that list should be consulted when preparing the annual coroner's budget or making claims for reimbursement from the parish governing authority.
You also request an opinion regarding the date you are eligible to begin receiving the mileage reimbursement. In your opinion request, you state that you took office on March 27, 2001. As that is the date your official duties began, that is the appropriate date for you to be eligible for mileage reimbursement for your official duties as coroner.
Regarding your inquiry whether the Coroner and the Police Jury agree to the amount of the coroner's salary, or the Police Jury establishes that amount on its own, the Supreme Court was quite clear that the Police Jury retains the authority to require the Coroner to operate on a fee-only basis, a salary-only basis, or a mixture of the two. "We find nothing in the statutory provisions, as revised, to indicate that the legislature intended to change the law and give coroners the power to choose whether to receive fees or to become salaried or both. Instead, this decision has always been, and continues to be, at the discretion of parish governing bodies." Carriere at page 984.
I trust that this addresses your inquiries. Please feel free to contact this office in the future should you require further assistance or information.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 __________________________ THOMAS L. ENRIGHT, JR. Assistant Attorney General
RPI/TLE;dsc
Date Received: Date Released: July 6, 2001
THOMAS L. ENRIGHT, JR. Assistant Attorney General
 Supreme Court of Louisiana David L. CARRIERE, Coroner v. ST. LANDRY PARISH POLICE JURY, et al. Nos. 97-C-1914, 97-C-1937. March 4, 1998.
ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT,PARISH OF ST. LANDRY *West Page 980 
David L. Carriere, Esq., CARRIERE HEBERT; Counsel for Applicant (No. 97-C-1914)
Hon. Earl B. Taylor, District Attorney, Donald J. Richard, Esq., Counsel for Respondent (No. 97-C-1914)
Hon. Earl B. Taylor, District Attorney, Donald J. Richard, Esq., Counsel for Applicant (No. 97-C-1937)
David L. Carriere, Esq., CARRIERE HEBERT; Counsel for Respondent (No. 97-C-1937)
MARCUS, Justice*
* Victory, J. not on panel. Rule IV, Part 2, § 3.
On March 12, 1996, David L. Carriere, then Coroner-Elect of St. Landry Parish,[1] petitioned for a writ of mandamus to compel the St. Landry Parish Police Jury and the individual jurors to provide office space, equipment, and supplies for the coroner's office, to pay the coroner a salary including health insurance and retirement benefits, and to provide the coroner with an operational budget that, including the coroner's salary and salaries for ancillary personnel, amounted to $227,190.
Carriere, a lawyer, was elected St. Landry Parish Coroner after no physician qualified to run for the position. The lack of interest on the part of parish doctors was apparently due to the fact that the office has been seriously underfunded for years. The previous coroner, Dr. Sylvan Manuel, resigned from the position *Page 2 
after serving for twelve years. Dr. Manuel testified that he personally paid for many expenses of the coroner's office. His out-of-pocket costs included postage, state dues, and malpractice insurance. He also paid the secretary from his private medical practice to do clerical work for the coroner's office. St. Landry Parish did not provide Dr. Manuel with office space, supplies, or equipment including a telephone. He used his own personal vehicle to travel many miles across the parish to perform his duties with no reimbursement for mileage. In some instances, Dr. Manuel also relied on the gratuitous services of doctors at various hospitals to perform rape examinations and to serve as deputy coroners in death cases. The local funeral homes also helped out by transporting bodies free of charge and allowing autopsies to be performed in their facilities. The Police Jury budgeted less than half of the $42,500 that Dr. Manuel requested be set aside for anticipated expenses of the coroner's office in each of his last two years. According to Police Jury Treasurer Andrea West, Dr. Manuel simply was not paid for any expenses once the budgeted funds ran out for the year. In addition, voters in St. Landry Parish overwhelmingly rejected a 1995 tax proposition that would have provided funding for the coroner's office.
Carriere ran for the position of St. Landry Parish Coroner precisely because of these funding problems. He felt that it would probably take a lawsuit to get the Police Jury to adequately fund the coroner's office, and as a lawyer he was willing to take on the challenge and handle such a suit. After being elected, Carriere told the Police Jury that he chose to be paid a salary instead of collecting fees for each service performed. He submitted a budget request for $227,190 that included his salary of $45,000 plus health insurance and retirement benefits, along with salaries for a chief deputy coroner, a secretary, an investigator, a photographer, and a licensed practical nurse, as well as other *West Page 981 
expenses. He also requested that the Police Jury provide him with *Page 3 
office space and reimburse him for office supplies and equipment purchases including furniture and computers. The Police Jury rejected his budget request and this mandamus action followed.
The trial court ordered the Police Jury to pay Carriere an annual salary of $25,000 plus health and retirement benefits, and to provide the Coroner-Elect with a total operational budget, exclusive of his salary, in the amount of $96,000. These monies were to cover expenses of the coroner's office including office space, equipment, supplies, and salaries for any and all ancillary personnel. The judgment also mandated that the Police Jury give Carriere the entire amount of the operational budget rather than requiring him to submit bills and seek reimbursement from the Police Jury for each expense incurred. In turn, any unused amount would be returned to the Police Jury or credited toward the next year's budget. Additionally, any income of the coroner's office would be turned over to the Police Jury. The court of appeal affirmed the judgment of the trial court ordering the Police Jury to provide Carriere with $96,000 for his "necessary or unavoidable" operational expenses, but reversed the trial court's judgment on all other issues. The Police Jury and Carriere applied for writs and we granted both applications in order to review the correctness of the court of appeal's decision.[2]
The issues before us are whether state constitutional provisions or statutory laws impose a mandatory duty on parish governing bodies: 1) to pay coroners a salary, and/or 2) to pay salaries for ancillary personnel of the coroner's office such as deputy coroners, secretaries, investigators, and photographers. We must also determine what items constitute the "necessary or unavoidable" operational expenses of the coroner's office as referred to in La.R.S. 33:1556(B)(1).
The office of coroner is provided for in the *Page 4 
Louisiana Constitution. La. Const. art. 5, § 29 (stating that "[i]n each parish a coroner shall be elected for a term of four years"). Coroners are members of the judicial branch of government, and although their jurisdiction is limited to the parish in which they hold office, coroners are state officials who perform state functions. Mullins v. State,387 So.2d 1151, 1153 (La. 1980). Other state officials with geographically limited jurisdiction include district attorneys, sheriffs, and clerks of court. La. Const. art. 5, §§ 26, 27,28.
The legislature determines the duties of state officials such as coroners. The duties of coroners are set out primarily in La.R.S. 33:1551 et seq. and La. Code Crim. Proc. arts. 101 et seq. and include things such as viewing bodies and/or conducting investigations for many types of deaths, issuing death certificates and other reports, examining all victims who allege they have been raped, performing or causing autopsies to be performed in deaths caused in violation of criminal statutes, and doing commitment investigations. Several provisions in La.R.S.33:1551 et seq. also cover the operations of the coroner's office including compensation of coroners and employees, and payment of other expenses.
Through these legislative enactments, the legislature has delegated some of the responsibility for funding the coroner's office to parish governing bodies. Such delegation is important because in the absence of a home rule charter or a grant of general governmental powers by a majority of the electorate, parish governments in Louisiana are powerless to act unless the legislature vests them with the power to act. Reed v.Washington Parish Police Jury, 518 So.2d 1044, 1046 (La. 1988); I. Jackson Burson, Jr., Not Endowed by their Creator:State Mandated Expenses of Louisiana Parish GoverningBodies, 50 La. L. Rev. 635, 638-40 (1990). Once the legislature places the burden of paying salaries or other expenses of a state official on parish governing bodies, *Page 5 
then those bodies are generally obligated to pay the mandated expenses. See Reed, 518 So.2d at 1049. Prior to a 1991 constitutional amendment, it was not uncommon for the legislature to impose mandatory duties on parish governing bodies that required the appropriation of funds without providing a *West Page 982 
corresponding funding source.[3] Alternatively, in the absence of state funding or a local funding source, the local governing authority can vote to approve the law on its own if it so desires to do so. La. Const. art. 6, § 14(A). However, it is beyond our powers to act in a similar fashion and place responsibility for funding state officials on parishes unless there already exists a clear legislative mandate to do so. Therefore, we must closely examine the statutory provisions regarding coroners, La.R.S. 33:1551 et seq., in order to determine the limits of the mandated role of parish governing bodies in relation to compensation of coroners, their ancillary personnel, and the operational expenses of the coroner's office.
CORONER'S SALARY
There are two statutory provisions regarding compensation for coroners: La.R.S. 33:1556 and 33:1559. La.R.S. 33:1556(A) sets out a list of fees for various services[4] provided by coroners and *Page 6 
limits the collection of these fees to coroners operating on a "fee basis":
 (5) The provisions of this Subsection shall only apply to coroners on a fee basis (emphasis added).
Subsections (D) and (E) divide the responsibilities for payment of the various fees listed in (A) between parishes and municipalities depending on the domicile of the decedent and the manner of death. The state is responsible for some fees associated with deaths occurring at state health care and treatment facilities. Subsection (G) requires parishes to pay the coroner's fees for services relating to admitting or committing persons to state health care and treatment facilities. La.R.S.33:1559 addresses extra compensation for coroners, and provides in pertinent part:
 A. (1) Any coroner who is paid a salary
or a salary *Page 7 and fees under the provisions of this Part, in addition, shall be paid five hundred forty-eight dollars per month by the state.
 (2) Any coroner who is paid only fees
under the provisions of this Part shall be paid five hundred forty-eight dollars per month by the state and may be paid an *West Page 983 additional five hundred dollars per month by the parish governing authority.
 B. The extra compensation for coroners payable by the state provided for in Subsection A of this Section shall be payable monthly by the state treasurer on the warrant of the coroners from funds appropriated by the legislature for this purpose (emphasis added).
It is necessary to read the pertinent parts of § 1556 and § 1559 in pari materia in order to understand the entire compensation scheme envisioned by the legislature. The language of § 1559 recognizes three different methods of compensating coroners: a salary, a salary plus fees, or fees alone. It also requires the state to pay coroners extra compensation of $548/month, and allows parish governing bodies to pay coroners who rely solely on fees an additional $500/month if the parish governing body so desires. Reading § 1559 in conjunction with § 1556, it appears that there are two types of fee-basis coroners: those who are paid a salary plus fees and those that are paid fees only. Coroners compensated in either of these manners can collect the fees per service listed in § 1556(A), and only when it is contemplated that a coroner will be compensated exclusively with a salary is he excluded from application of § 1556(A).
The crucial question, however, is who determines whether a particular coroner will be compensated with fees only, a salary only, or a combination of the two. Carriere contends that it must necessarily be the coroner's choice. He claims that it would violate principles of independence and be contrary to the constitutional nature of the office to put the coroner at the mercy of local governmental authorities in relation to his compensation.
The court of appeal disagreed and reversed the trial court's judgment compelling the Police Jury to pay Carriere a $25,000 *Page 8 
salary plus health insurance and retirement benefits. It interpreted § 1559(A)(2) as providing a purely discretionary option for parish governing bodies to provide coroners who receive only fees with an additional $500/month as extra compensation. The only mandatory language in § 1559 refers to the state's obligation to pay all coroners $548/month. Although Carriere pointed out that the state has scarcely appropriated funds to pay this statutory supplement, the court of appeal correctly noted that the state is not a party defendant in this suit. The court of appeal found it significant that the legislature provides salaries for other constitutionally enshrined state officials such as district attorneys and sheriffs, and it determined that it was also the legislature's responsibility to adequately compensate coroners. It declined to impose the burden of providing salaries to coroners on parish governing bodies absent "clear instruction" from the legislature to do so.
We agree with the conclusion reached by the court of appeal. Although there is nothing in the current statutory provisions to indicate which party is entitled to make this choice, a provision in the old law, prior to revision in 1984, is instructive. From 1926 until 1984 La.R.S. 33:1556 stated in pertinent part:
 The coroner of each parish . . . may be either or both ex officio parish physician
and parish health officer. . . . When the coroner is designated as parish health officer, the police jury or other governing authority shall fix a salary in addition to the coroner's fees
as otherwise provided, to be paid to the coroner in his capacity as parish health officer. . . . However, the coroner shall not be designated as parish health officer in any parish having a full-time health unit. If the police jury fixes the salary of the coroner, as parish physician, such salary shall be in lieu of all fees fixed in R.S. 33:1558 [now § 1556(A)].
Act No. 429 § 1, 1978 La. Acts 1063-64 (emphasis added);see Act No. 52 § 1, 1977 La. Acts 190; Act No. 151 § 2, 1952 La. Acts 151-52; Act No. 241 § 1, 1926 La. Acts418.
This provision explains the legislature's reference to three alternative methods of compensating coroners in the current § 1559. Formerly, a coroner who was also named parish health officer was *Page 9 
entitled to a salary plus fees, a coroner named ex officio parish physician collected fees until and unless the *West Page 984 
parish governing body fixed a salary for him, and under such circumstances, the salary was in lieu of fees, and a coroner given neither additional title or responsibilities collected only fees. The parish governing body decided whether or not to designate the coroner as ex officio parish physician and/or parish health officer.
In 1984, the statutory provisions in Title 33 regarding the coroner's office were updated to reflect the duties actually being carried out by coroners and to increase their fees.Tape of Louisiana House Judiciary Committee, Considerationof Louisiana Senate Bill 233 (June 19, 1984). The paragraph regarding designation of the coroner as ex officio parish physician and/or parish health officer was omitted in the revision. However, the legislature reinforced its intention to provide parish governing bodies with a choice regarding compensation of coroners. The 1984 revision added § 1559 which clearly maintains the three alternative methods of compensating coroners, and indicates a desire on the part of the legislature for the state to shoulder some of financial burden regarding compensation of coroners. We find nothing in the statutory provisions, as revised, to indicate that the legislature intended to change the law and give coroners the power to choose whether to receive fees or to become salaried or both. Instead, this decision has always been, and continues to be, at the discretion of parish governing bodies.[5]
 SALARIES FOR ANCILLARY PERSONNEL
La.R.S. 33:1555 addresses responsibilities for payment of compensation to deputy or assistant coroners, as well as other *Page 10 
employees of the coroner's office, and provides in pertinent part:
 A. Each coroner may appoint one or more deputy or assistant coroners to perform his duties. . . . They shall possess the same qualifications as the coroner and be paid by the coroner appointing them or by arrangement with the parish governing authority if the coroner is on a salary basis. . . .
 B. The coroner may appoint any necessary secretaries, stenographers, clerks, technicians, investigators, official photographers, or other helpers. The salaries of these employees shall be paid by the coroner out of his fees or by arrangement with the parish governing authority if the coroner is on a salary basis (emphasis added).
This section makes a distinction between salaried coroners and coroners who collect the statutory fees listed in § 1556(A), i.e., salary plus fees and fees-only coroners. The parish governing authority must pay salaries for all ancillary personnel if its coroner is on a salary basis. If not, these salaries shall be paid by the coroner.
Carriere certified salaries for a chief deputy coroner, a secretary, an investigator, a photographer, and a licensed practical nurse as "necessary or unavoidable" expenses of the coroner's office. La.R.S. 33:1556(F) states:
 F. Nothing herein shall be construed as prohibiting the payment by the parish or municipality of all necessary or unavoidable expenses certified by the coroner.
Subsection (F) is a general provision that extends to any and all types of expenses that may be certified as "necessary or unavoidable" by the coroner. We do not find, however, that itmandates that parishes or municipalities do anything. The words "[n]othing herein shall be construed as prohibiting" cannot be construed as imposing a mandatory duty. Rather, such language grants local governing authorities the power to pay, in their discretion, any and all expenses of the coroner's office. The location of Subsection (F) supports this intended meaning as well. Subsection (F) follows (A) setting out statutory fees for fee-basis coroners, (B) mandating that parish governing bodies pay all "necessary or unavoidable" operational expenses of the coroner's *West Page 985 *Page 11 
office, and (D) and (E) dividing responsibility for payment of various fees between parishes and municipalities. Subsection (F) simply provides that parishes or municipalities can elect to pick up the cost of expenses of the coroner's office in excess of the limitations in fee amounts contained in Subsection (A), and in spite of the fact that a particular expense may not fall under that particular governmental authority's listed responsibilities in (D) and (E). The court of appeal erred in relying on Subsection (F) to require parish governing bodies to pay salaries for ancillary personnel of the coroner's office.
Carriere also claims that since he elected to be paid a salary instead of fees, the Police Jury must pay the salaries of any deputy or assistant coroners as well as all necessary personnel. We have already found that coroners have no authority to make such a choice. Carriere is a fee-basis coroner, and as such, he is responsible for paying the salaries of any deputies or assistants, and all other employees of the St. Landry Parish Coroner's Office.[6] We understand Carriere's complaint that the amount of fees collected by the coroner's office in St. Landry Parish is inadequate to pay salaries for any ancillary personnel. Again, this problem is not a result of any failure on the part of the Police Jury to perform its legislatively mandated duties. Rather, it is a matter that properly addresses itself to the legislature.
CORONER'S OPERATIONAL EXPENSES
The statutory provisions regarding coroners clearly place responsibility for payment of the coroner's operational expenses on parish governing bodies. La.R.S. 33:1556(B)(1) provides: *Page 12 
 B. (1) All necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the coroner's office shall be paid by the parish when such expenses are certified by the coroner as being necessary or unavoidable.
The Police Jury does not dispute that it must pay "necessary or unavoidable" operational expenses, however, in accordance withReed, 518 So.2d at 1049, the Police Jury claims that many of the items requested by Carriere are not legitimate or reasonable in amount. We agree that Reed limits the mandatory duty of parish governing bodies to fund expenses "certified by the coroner as necessary or unavoidable" by the standard of reasonableness. The budget request of the coroner must be 1) legitimately related to the function of his office, and 2) it must be in a reasonable amount. Nonetheless, the Police Jury must accept its responsibility to pay all "necessary or unavoidable" operational expenses so that the coroner's office can properly function.
The trial court, affirmed by the court of appeal, ordered the Police Jury to provide Carriere with $96,000 to meet his "necessary or unavoidable" operational expenses for the year without particularizing the basis for this amount. Therefore, we are required to review the budget request to determine whether the items requested by Carriere are reasonable "necessary or unavoidable" operational expenses of the coroner's office. We find that the following items meet this standard:
_______________________________________________________________ | Mandated Expense | Annual Cost | |__________________________________________|____________________| | Accounting Charges | $ 1,800 | |__________________________________________|____________________| | Association and Dues | $600 | |__________________________________________|____________________| | Banking Expenses | $180 | |__________________________________________|____________________| | Insurance/Errors and Omissions | $1,500 | |__________________________________________|____________________| | Insurance/Non-Owned Automobiles | $1,080 | |__________________________________________|____________________| | Medical Supplies | $600 | |__________________________________________|____________________| | Mobile Phone | $720 | |__________________________________________|____________________| | Office Copy and Computer Supplies | $900 | |__________________________________________|____________________| | Pager | $360 | |__________________________________________|____________________| | Postage | $900 | |__________________________________________|____________________| *Page 13 
_______________________________________________________________ | Telephone Service | $1,500 | |__________________________________________|____________________| | Mileage Reimbursement | $2,400 | |__________________________________________|____________________| *West Page 986 
We excluded Carriere's requests for salaries and benefits for ancillary personnel including worker's compensation insurance, as well as, funding to pay one deputy coroner and a doctor on a contract basis. As noted previously, the Police Jury is not required to pay salaries for ancillary personnel of the coroner's office, and Carriere cannot avoid this result by calling deputy coroners and other employees "necessary or unavoidable" expenses and hiring them on a contract basis. Carriere also included a request for $18,000 in his budget to pay for autopsies on a contract basis. We do not dispute the amount of this request, but it is excluded as a "necessary or unavoidable" operational expense. Instead, Carriere should bill the Police Jury as these services are rendered because the parish is only responsible for the costs of some contract autopsies, and the amount paid for each one must be approved by the Police Jury pursuant to La.R.S.33:1560.
The approved items provide a total of $12,540 in "necessary or unavoidable" operational expenses for the coroner's office. However, Carriere is entitled to more than that. The budget request submitted to the Police Jury did not provide dollar amounts for office space, office equipment and supplies, utilities, or janitorial services. We hold that these are "necessary or unavoidable" operational expenses of the coroner's office. La.R.S. 33:1556(B)(2) provides:
 (2) When quarters for the coroner's office or a morgue are established by the parish, the parish shall furnish essential supplies and equipment for the office or morgue.
We interpret this provision in conjunction with Subsection (B)(1) as giving parish governing bodies a choice: provide the coroner with adequate office space within their available properties or pay rent for the same. If office space is provided, parish governing *Page 14 
bodies must also provide essential furniture, equipment, and supplies. If the parish elects to rent office space for the coroner, office equipment and supplies are covered under Subsection (B)(1) as "necessary or unavoidable" operational expenses.
Carriere's budget also gave no dollar amount for transportation and storage of bodies. La.R.S. 33:1556 (D) lists transportation of bodies as a recoverable expense of coroners, and Subsection (E) divides the responsibility for paying this cost between parishes and municipalities. A request for funds for this purpose based on the estimated number of bodies that will fall under parish responsibility, along with storage costs for the same would also be a "necessary or unavoidable" expense that must be funded as an operational budget item by the Police Jury.
Once Carriere submits a budget request including dollar amounts for the additional items mentioned above, the Police Jury is instructed to provide Carriere with the entire amount. In accordance with La.R.S. 33:1572, the Police Jury shall first use monies in the Coroner's Operational Fund to fund the coroner's operational budget, and then resort to other funds to pay the remainder. At the end of the year, any surplus amounts will be returned to the Police Jury or may be used as a credit in funding the next year's budget request.
DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed in part, and reversed in part. All costs are assessed against the Police Jury.
[1] Carriere took office as St. Landry Parish Coroner on March 25, 1996. He resigned three months later due to the ongoing funding problems of the coroner's office. The Police Jury appointed Dr. Russell Pavich to fill the vacancy. Dr. Pavich was subsequently elected and continues to serve as St. Landry Parish Coroner. Dr. Pavich joined as plaintiff during the pendency of this litigation. When we refer to Carriere in this opinion, we are referring to the St. Landry Parish Coroner.
[2] 97-1914, 97-1937 (La. 9/26/97), 701 So.2d 963.
[3] La. Const. art. 6, § 14(A), approved October 19, 1991, provides that no laws requiring "increased expenditures" on the part of a political subdivision will be effective until and unless the legislature either appropriates funds to pay for the measure or passes a law that provides for a local source of revenue. Alternatively, the local governing authority can make such a law effective by adopting a resolution approving the law. However, the relevant statutory provisions regarding the coroner's office came into existence prior to the constitutional amendment and are unaffected by it. La. Const. art. 6, §14(B)(3) (stating that this amendment does not apply to "a law enacted and effective prior to the adoption of the amendment of this Section by the electors of the state in 1991").
[4] The fee schedule provides as follows:
 A. (1) The coroner shall receive:
 (a) For every investigation, including issuing necessary papers and reports, fifty dollars;
 (b) For viewing bodies, fifty dollars;
 (c) For the performance of an autopsy, a fee of not less than two hundred fifty dollars nor more than three hundred dollars, at the discretion of the governing authority of the parish or municipality, and the cost of any laboratory tests actually incurred;
 (d) For attendance or testimony in any case in court in matters arising from his official duties, seventy-five dollars per day per case;
 (e) A fee of fifty dollars for papers issued in each interdiction case or commitment of mental or incompetent case.
 . . . .
 (3) The coroner shall receive a reasonable fee or compensation, as agreed to by the coroner and the governing authority of the parish or municipality, for any physical or mental examination or investigation when requested by the district attorney, any judge, sheriff, chief of police, or by any responsible citizen or resident when acting in good faith in an emergency and in the furtherance of the public good and safety.
 . . . .
 (6) Notwithstanding any provision of this Section to the contrary, the affirmative approval of the governing authority of the parish or municipality shall be required for the coroner to charge more than two hundred fifty dollars for the performance of an autopsy. In addition, the affirmative approval of the governing authority of the parish or municipality shall be required for the coroner to charge for any expense, tests, costs, or other fees, when the charge for such expenses, tests, costs, or other fees exceed the maximum charges established in the coroner's annual fee schedule. In such fee schedule, the coroner shall list all fees for which a charge of fifty dollars is authorized by law. Such schedule shall be filed with the governing authority of each affected parish or municipality not later than the last day of January of each year.
La.R.S. 33:1556(A).
[5] We note that the legislature considered a proposal during the past session that would have provided state funding of an annual salary and fees for many rural coroners. La. H.B. 1634, 23d Leg., Reg. Sess. (1997) (original and engrossed). The proposal passed the House, but the Senate Finance Committee deferred action on the bill. Senate Panel Kills Bill forCoroner's Funds, Baton Rouge Morning Advoc., June 19, 1997, at 21A.
[6] We note that this statutory provision regarding compensation of ancillary personnel of the coroner's office is completely different from the statutory provision covering expenses and personnel of the district attorney's office. La.R.S. 16:6 requires police juries to pay expenses of district attorneys "for salaries of stenographers, clerks and secretaries, and salaries or charges for special officers, investigators and other employees." See Reed,518 So.2d at 1044-45. In Reed, we directed the policy jury to pay salaries for personnel in the district attorney's office because the statute required it. Id. at 1045.