Dear Secretary McDaniel,
You have requested the Attorney General's opinion as to whether the Waste Tire Management Fund (WTMF or the Fund) is legally obligated to pay the periodic shortfalls caused by a shortage of funds in the WTMF. Specifically, you ask whether the Fund is under any legal obligation to pay the full monthly amount requested by the waste tire processors if there is a shortage in the WTMF. As explained in detail below, our office is of the opinion that because the payments accrue monthly and are dependant upon the sufficiency of monies in the fund, the Waste Tire Management Fund is not legally obligated to pay the periodic shortfalls when a shortage in the WTMF exists.
There are several aspects of the law that must be discussed before reaching our final conclusion. First, is the WTMF under any legal, statutory obligation to pay the full monthly amount as requested by the processors? Second, if the Fund is not statutorily obligated to make the full monthly payments, does the Waste Tire Processor Agreement contractually obligate the WTMF to make the payments? The final analysis involves whether the WTMF has the authority to incur a debt, in the form of the creation of an arrearage when a pro rata monthly payment is made in lieu of the full monthly payment, and whether the WTMF can discharge this debt by making additional periodic payments to the processors at times when the WTMF has a surplus.
Statutory Obligation
La. R.S. 30:2418(1)(2) provides that "a permitted waste tire processing facility shall be eligible to receive a minimum of one dollar and fifty cents per twenty pounds of waste tire material." (emphasis added) However La. R.S. 30:2418(l)(3)(a) goes on to provide that "in the event the balance of the fund is insufficient to meet the obligations of waste tire processors provided for above, the department, after meeting all payments required by law, shall pay any undisputed amounts in a pro rata share to waste tire processors having a standard permit." La. R.S. 30:2418(l)(3)(b) goes on to state "in the event the fund has a surplus after meeting all obligations of the fund for the month . . . such surplus shall be distributed in a pro rata share to those waste tire processors having a standard permit for whom there are unpaid obligations of the fund." When read together, these two provisions contemplate that any surplus existing in the WTMF at the end of the month may be distributed to the processors who did not receive full payment. However, this obligation accrues on a monthly basis and is extinguished at the end of the month; therefore, the statute does not impose on the WTMF any legal obligation to pay the periodic shortfalls beyond that which may exist at the end of the month in accordance with La. R.S.30:2418(l)(3)(b).
Article 11 of the Louisiana Civil Code requires that words of law be given their generally prevailing meaning. Thus, the first step in our analysis should be to determine whether the phrase "shall be eligible" creates a mandatory obligation to pay or merely a permissive obligation. Black's Law Dictionary defines the term "eligible" as "fit and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status."[1] Therefore, the statute simply states that waste tire processing facilities are fit and proper to be selected to participate in the Waste Tire Program and receive payments from the WTMF. The statute does not make the payments mandatory. Although the processors are qualified to participate in the Program and receive payments, the payments are conditioned on several factors, including: (1) the facility providing to the department any documentation required by law or by rules and regulations promulgated by the department;[2] (2) the processors providing the department with a monthly report;[3] and (3) the sufficiency of monies in the fund.[4]
It is also well settled principle of Louisiana statutory construction that a statute should be interpreted as a whole in order to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies so that each part is given effect.[5] By interpreting the statute to allow for a pro rata monthly payment in lieu of full payment without creating an arrearage, meaning can be given to remaining statutory provisions, which indicate that the Legislature contemplated a scenario in which the WTMF would have insufficient funds to make full payments. La. R.S.30:2418(l)(3)(a) allows for a pro rata payment when the funds are insufficient to meet all obligations. To opine that the WTMF is legally obligated to pay the periodic shortfalls would make 2418(l)(3)(a) a meaningless provision of the statute.
The Legislature, when it enacted the Waste Tire Management Fund, also mandated that the Secretary of DEQ promulgate regulations and guidelines for the administration and enforcement of the waste tire program.[6] As part of this mandate, the Secretary was to "establish a procedure and criteria for local governing authorities to apply for and receive funds to remediate waste tire problems in their respective jurisdictions."[7]
Thus, to determine whether the WTMF is legally obligated to pay the periodic shortfalls, it is helpful to look at the regulations promulgated by DEQ.
LAC 33:VII. 10515 uses language identical to La. R.S. 30:2418 — "shall be eligible to receive." Furthermore, LAC 33:VII. 10535(D)(1) — Payments for Processing and Marketing Waste Tires and Waste Tire Material — states that "payments shall be paid . . . as outlined in LAC 33:VII. 10515." (emphasis added) The phrase "shall be paid" does not mandate payment, but instead mandates that the payments shall be paid in accordance with the procedures set forth in 10515, which repeats the "shall be eligible" language. LAC 33:VII. 10535(D)(8) also contains language similar to that found in the statute, providing that "the amount of payments made to each processor is based on the availability of monies in the WTMF." Again, this supports the idea that like the Legislature, the Secretary was aware that there may be times when the WTMF may lack sufficient funds to make full payments to the waste tire processors. Also, pursuant to the regulations promulgated by DEQ, payments are made to the processor on a monthly basis, after properly completed monthly reports are submitted by the processor to DEQ's Office of Management and Finance.[8] Thus, because the payments are accrued on a monthly basis, so must they also be dispensed with on a monthly basis. The shortages of the fund on any given month and the issuance of a pro rata payment, as contemplated by the statute, in lieu of full payment does not result in the accrual of a debt by the WTMF, which must then be labeled and accounted for as periodic shortfalls, or arrears.
A comparison of the question presented in this scenario and one presented in a similar case decided by the Louisiana Supreme Court is also helpful. The issue in Reed v. Washington ParishPolice Jury[9] was whether La. R.S. 16:6 imposes a mandatory duty on a police jury to fund the itemized expenses set forth in the statute. La R.S. 16:6 provides:
 The district attorneys of this state . . . shall be entitled to an expense allowance for salaries of stenographers, clerks . . .
 The police juries of the various parishes of the state of Louisiana are hereby authorized to pay from their general fund any of the items of expense, as provided for herein, incurred by the several district attorneys . . .
(emphasis added). The first paragraph of 16:6 provides for a mandatory expense allowance for district attorneys. The second paragraph states the police jury is "authorized" to pay from its general fund any of the expenses "as provided for herein." The court determined that because the term "authorized" is susceptible of two interpretations — either empowering the police jury to act, or as a direction to the police jury to act — it was up to the court to ascertain the intent of the legislature.[10] To do so, the court reviewed the language of the statute and the legislative history of the statute.
In addition, the Court began its analysis by referring to basic principles of statutory construction:
 It is a fundamental principle of statutory construction that statutes must be interpreted in their entirety. The meaning of a word in a statute must be determined in light of the statute as a whole. There is a presumption that the legislature enacted 16:6 for some definite purpose and we must endeavor to construe it so as to give it effect and accomplish the purpose for which it was enacted. When a statute is susceptible of two interpretations, a court must choose the one which affords a reasonable and practical effect of the entire act over one which renders part of it meaningless or useless.[11]
The Court held that a reading of the language employed by the Legislature, in the context of the statute as a whole, leads to the conclusion that the term "authorized" is mandatory.[12]
It reasoned that it is only if both paragraphs are read as mandatory that effect can be given to the entire statute.
In the present situation, a reading of the language employed by the Legislature, in the context of the statute as a whole, leads us to the conclusion that the term "shall be eligible" is permissive. This is because it is only if you read this phrase as permissive that effect can be given to the remaining provisions which authorize pro rata payments to waste tire processors if the balance of the fund is insufficient to meet the monthly obligations. Thus, it is the opinion of this office that Louisiana's Waste Tire Program does not create a statutory obligation for the WTMF to pay the periodic shortfalls caused by a shortage in the funds.
Contractual Obligation
The Waste Tire Processor Agreement does not create a contractual obligation on the part of the WTMF to pay the periodic shortfalls. The Agreement contains the same language as the statute. (i.e., it repeats that the payments are made on a monthly basis after the processors submit their monthly reports). The Agreement also states that the payments are based upon a correct and completed Waste Tire Processing Facility Monthly Report and Application for Payment and on the availability ofmonies in the Waste Tire Management Fund.
 Constitutionality of Creating a Payment to Make up for thePeriodic Shortfalls
To contemplate that the statute mandates full monthly payments and that if a pro rata payment is made on any given month, the difference between the amount paid and the amount requested becomes an arrearage could result in an unconstitutional accrual of debt by a state agency. The Louisiana Constitution, Article VII, Section 6(A), provides that the state does not have the authority to incur debts or issue bonds, except through provisions passed by two-thirds of the members of each house.[13] Thus, because the statute arguably contains some ambiguity regarding the extent of the obligation to make monthly payments, we shall read the statute in an effort to give it meaning and reconcile any inconsistencies. This analysis leads us once again to the conclusion that the legislature did not intend for the WTMF to have the authority to incur debt; therefore, the statute cannot be read as creating a legal obligation to pay the periodic shortfalls caused by a shortage in the funds.
Because the Waste Tire Management Fund is not legally obligated to pay the periodic shortfalls caused by a shortage, any disbursement made by the WTMF to a processor in the form of a back payment would constitute an unconstitutional donation of public funds. La. Const. Art. VII, Sec 14(A) provides, in pertinent part:
 "Except as otherwise provided by this constitution, the funds, credit property, or things of value of the state or any political subdivision shall not be loaned, pledged or donated to or for any person, association, or corporation, public or private."
The Supreme Court has interpreted Article VII, Section 14 to be violated whenever the State or a political subdivision seeks to give up something of value when it is under no obligation to do so.[14] The opinions of this office have consistently construed the "legal obligation" requirement referred to in theCity of Port Allen decision to be a requirement that the purpose of and power for a particular expenditure of public funds be "sanctioned", or "authorized by law", or in the "discharge of a legal duty."[15] The opinions of this office also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds.[16] Because this office is of the opinion that the statute does not create an underlying legal obligation to make full monthly payments when monies in the fund are insufficient, any transfer of funds for this purpose would be prohibited by Article VII, Section 14 of the Louisiana Constitution.
Conclusion
We conclude that the WTMF is not legally obligated to pay the periodic shortfalls caused by a shortage of funds in the WTMF. First, the language of the statute supports this interpretation if effect is to be given to the provisions of the statute as a whole. Second, the Legislature mandated that the Secretary of DEQ decide how the funds are to be distributed to local governments and the regulations enacted by the Secretary also support the conclusion that full payments to waste tire processors, even when there are shortfalls in the WTMF, was not contemplated. Finally, to interpret the statute as requiring the WTMF to incur a debt and make payments to discharge this debt, when the statute gives the WTMF no authority to do so, would create an unconstitutional obligation, the discharge of which would also be unconstitutional.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Yours truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _____________________________ Megan K. Terrell Assistant Attorney General
[1] Bryan A. Garner, Black's Law Dictionary, 7th ed., p. 538 (West 1999).
[2] La. R.S. 30:2418(I)(2).
[3] See Waste Tire Processors Agreement.
[4] La. R.S. 30:2418(I)(3)(a).
[5] State v. Cazes, 263 So.2d 8 (La. 1972).
[6] La. R.S. 30:2418(H).
[7] La. R.S. 30:2418(H)(9).
[8] LAC 33:VII. 10535.D.8.
[9] 518 So.2d 1044 (La. 1988).
[10] Reed, 518 So.2d at 1045.
[11] Id. at 1046.
[12] Id.
[13] LA. CONST. art VII, § 6(A).
[14] City of Port Allen v. Louisiana Risk Management, Inc.,439 So.2d 399 (La. 1983).
[15] Op. Atty. Gen. No. 92-204. See also Guste v. NichollsCollege Foundation, 564 So.2d 682 (la. 1990).
[16] Op. Atty. Gen. Nos. 03-0334, 92-543, 92-494, 92-402.